1  Clayeo C. Arnold, SBN 65070
2  Kirk J. Wolden, SBN 138902
   Clifford L. Carter, SBN 149621
3  **CLAYEO C. ARNOLD**
   **A PROFESSIONAL CORPORATION**
4  865 Howe Avenue
   Sacramento, CA 95825
5  Telephone: (916) 924-3100
   Facsimile: (916) 924-1829
6  Email: kwolden@justice4you.com

7  Ernest Cory (ASB-2279-Y83E)
   F. Jerome Tapley (ASB-0583-A56T)
8  Hirlye R. "Ryan" Lutz, III (ASB-6641-E59L)
   CORY WATSON CROWDER & DEGARIS, P.C.
9  2131 Magnolia Avenue
   Birmingham, AL 35205
10 Telephone: (205) 328-2200
   Facsimile: (205) 324-7896

11 Attorneys for Plaintiffs and the Class

12

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15

16 BRANDON BANKS and ERIN BANKS,          )   Case No.:
   individually and on behalf of a        )
17 **CLASS** of similarly situated         )   CLASS ACTION COMPLAINT FOR
   consumers,                             )   EQUITABLE, INJUNCTIVE AND
18                                        )   DECLARATORY RELIEF, RESTITUTION
          Plaintiffs,                     )   AND DAMAGES
19                                        )
   vs.                                    )
20                                        )
   NISSAN NORTH AMERICA, INC.;            )
21 NISSAN MOTOR CO., LTD.; NISSAN         )
   DESIGN AMERICA, INC.,                  )
22                                        )
          Defendants.                     )
23 _____

24        Plaintiffs, BRANDON and ERIN BANKS, by and through Plaintiffs' undersigned

25 counsel, individually and on behalf of all others similarly situated, hereby set forth in

26 this Individual and **CLASS** Action Complaint claims for equitable, injunctive and

27 declaratory relief, restitution, and damages.

28        This **CLASS** Action is brought on behalf of all Consumers (referred to herein

1   collectively as "Plaintiffs," "**CLASS** members," "Consumers" and "Nissan Owners") who

2   purchased AFFECTED VEHICLES, as defined in paragraph 8 infra, which vehicles have

3   been developed, designed, manufactured, assembled, tested, marketed, promoted,

4   advertised, sold, warranted, distributed, and serviced by Defendants NISSAN NORTH

5   AMERICA, INC., and NISSAN MOTOR CO, LTD., since at least 2004.

6        AFFECTED VEHICLES pose a significant and immediate safety threat to all users

7   of such vehicles and to the public in general in that the delta stroke sensor, an integral

8   electronic component of said vehicles which controls critical safety aspects of braking, is

9   well known by Defendants to be defective and faulty, having a high and unreasonably

10  high incidence of failure during normal and customary use.  The failure of this defective

11  part results in the braking ability of  AFFECTED VEHICLES being disabled to the point

12  where drivers are, without warning and suddenly, unable to stop their vehicle within a

13  reasonably safe time and distance, or at all.  As the result of the failure of the Delta

14  Stroke Sensor in their AFFECTED VEHICLE, plaintiff ERIN BANKS drove through a

15  controlled and busy intersection through a red light with her small children in the car.

16  Despite applying the brakes in a manner reasonably anticipated to bring the vehicle to a

17  complete stop, she frighteningly and dangerously went through the intersection,

18  thankfully without being involved in or causing a collision.

19       Defendants have and continue to their significant financial gain hide from and fail

20  to disclose to consumers this critical safety defect, which defect should have long ago

21  resulted in the timely voluntary recall of AFFECTED VEHICLES to fix and render said

22  VEHICLES safe for use.  Instead, Defendants, and each of them, have failed to take

23  these or other steps to mitigate the unreasonable danger and hazard posed by this

24  concealed danger.

25       WHEREFORE, Plaintiffs individually and on behalf of the **CLASS** aver as follows:

26       1.    At all times relevant to this action, Defendants intentionally, recklessly,

27  and/or negligently concealed, suppressed, and omitted the risks, dangers, defects and

28  disadvantages of their AFFECTED VEHICLES.  At all times relevant to this action,

Class Action Complaint for Damages        2

1  Defendants marketed, sold, distributed, advertised, warranted, serviced and maintained

2  such VEHICLES as safe to use, when, in fact, Defendants had reason to know, and did

3  know, that their AFFECTED VEHICLES were not safe to use for their intended purpose.

4  The AFFECTED VEHICLES pose a serious risk to the safety of owners, users,

5  passengers, occupants, pedestrians and fellow drivers including significant injury or

6  death.

7       2.      Pursuant to Rules 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil

8  Procedure, Plaintiffs will seek certification of a national Consumer **CLASS** consisting of:

9       All consumer residents in the United States who own AFFECTED VEHICLES
        and those who do not presently own but incurred monetary loss caused
10      by the failure of the delta stroke sensor in their AFFECTED VEHICLE,
        including repair or replacement and other pecuniary loss associated with
11      such failure. This definition specifically excludes any and all persons who
        assert personal injury claims arising from or relating to the failure of the
12      delta stroke sensor in their AFFECTED VEHICLE.

13      3.      This is a **CLASS** Action filed on behalf of a national **CLASS** of Consumers

14  residing in the United States who own, or did own, one or more AFFECTED VEHICLES.

15  This action seeks injunctive and declaratory relief, damages, restitution, and

16  disgorgement arising out of Defendants' wrongful misconduct resulting in the

17  distribution, sale, warranting, maintenance, service and repair, and continued unsafe

18  operation of AFFECTED VEHICLES.

19                          **JURISDICTION AND VENUE**

20      4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)

21  because this action is between citizens of different states, a **CLASS** action has been

22  plead, and the matter in controversy exceeds the sum or value of $5,000,000.00

23  exclusive of interests and costs. None of the causes of action stated herein has been

24  assigned or otherwise given to any other court or tribunal.

25      5.      Venue is proper in this District pursuant to 28 U.S.C.  1391(a), (b) and ©,

26  U.S.C. 1407 and 28 U.S.C. 22.  Defendants do substantial business in the State of

27  California, and within this Federal Judicial District, are registered to and in fact doing

28  business within the State of California and otherwise maintain requisite minimum

Class Action Complaint for Damages            3

1   contacts with the State of California.  Additionally, Defendants distribute in this district,

2   receive substantial compensation and profits from sales, and maintenance and service

3   of, AFFECTED VEHICLES in this District, and have and continue to conceal and make

4   material omissions in this District so as to subject them to in personam jurisdiction in

5   this District.  Furthermore, venue is proper in this District because, like many other

6   **CLASS** members, significant and material aspects of the transaction relating to

7   plaintiffs' purchase of their AFFECTED VEHICLE occurred within and were otherwise

8   connected to this judicial district.

9                                          **PLAINTIFFS**

10         6.       Plaintiffs reside within Placer County, State of California.

11         7.       Plaintiffs bring this action individually and as a **CLASS** action as an owner

12  of an AFFECTED VEHICLE whose VEHICLE has suffered a loss of braking due to the

13  safety defect alleged herein, and who have lost money and suffered injury in fact as a

14  result.  In this regard, plaintiffs act not only for themselves but as representatives of a

15  **CLASS** of similarly situated individuals who fall within the description set forth in

16  paragraph 3, above.

17                                    **AFFECTED VEHICLES**

18         8.       Defendants are the developers, designers, manufacturers, assemblers,

19  testers, inspectors, marketers, advertisers, distributors and sellers, warrantors, and

20  service and maintenance providers of 2004-2006 Nissan Armada and Titan Trucks, and

21  Infinity QX56 vehicles (hereafter "AFFECTED VEHICLES").  Plaintiffs are the present

22  and, in some instances, former owners of AFFECTED VEHICLES.

23                                        **DEFENDANTS**

24         9.       Defendant NISSAN NORTH AMERICA, Inc. is an active California

25  corporation which directs and coordinates all of Nissan's activities, including design,

26  development, and marketing of Nissan vehicles including AFFECTED VEHICLES, in the

27  U.S. market.  This defendant engaged in these activities affecting the design and sale of

28  AFFECTED VEHICLES from its principal place of business in Gardena, California, and has

Class Action Complaint for Damages              4

1  continued to perform significant and meaningful activities in connection therewith in

2  California since 2006.

3       10.     Defendant NISSAN MOTOR CO., LTD. Is a company of unknown form and

4  origin which describes itself as a global automotive company responsible for activities

5  relating to Nissan vehicles, including AFFECTED VEHICLES, worldwide.  Plaintiffs are

6  informed and believe that said company directs, supervises, oversees, and monitors the

7  activities of NISSAN NORTH AMERICA, INC., and is directly responsible for and involved

8  as an active participant in the development, design, marketing and warranting of all

9  Nissan vehicles in the United States, and in  after sale conduct affecting AFFECTED

10  VEHICLES.  The Defendants described herein and in Paragraph 9 shall be referred to

11  collectively as "NISSAN defendants."

12       11.     Plaintiffs are further informed and believe and thereon allege that

13  Defendants, individually and collectively each of them, were at all times herein

14  mentioned the agents, servants, joint venturers, co-conspirators, controlling and

15  actively participating parents, subsidiaries, affiliates, relations, or employees of each of

16  the other Defendants, and were at all times herein mentioned acting within the course

17  and scope of that agency, service and relationship, and with the consent and knowledge

18  of, or in consort with, each other Defendant, and as a single interdependent operation

19  lacking sufficient or any adherence to separate corporate formalities, including financial

20  independence.

21                          **GENERAL ALLEGATIONS**

22       12.     On or about October 2006, plaintiffs purchased a 2004 Nissan Armada.  At

23  the time of purchase, the vehicle had approximately 23,000 miles of use recorded on

24  the odometer.  In conjunction with their purchase of their AFFECTED VEHICLE, Plaintiffs

25  purchased an extended 75,000 mile warranty on the vehicle.  Their ability to purchase

26  this Nissan factory warranty was a material and critical factor in their decision to

27  purchase their AFFECTED VEHICLE.

28       13.     On or about February 24, 2011, Plaintiff Erin Banks was driving Plaintiffs'

Class Action Complaint for Damages           5

1  AFFECTED VEHICLE.  As she approached a controlled intersection at approximately 40

2  miles per hour with her two small children in the back seat, Mrs. Banks began to apply

3  the brakes to stop at a red light at the intersection.  As she applied the brakes, the

4  brakes did not slow the vehicle.  She repeatedly attempted to firmly apply, and/or pump

5  the brakes without success, which resulted in her coasting through the busy and

6  controlled intersection against the red light at approximately 40 miles per hour.

7         14.    Plaintiffs' AFFECTED VEHICLE was taken to Future Nissan in Roseville,

8  California.  At Future Nissan, Plaintiffs' VEHICLE was inspected.  Plaintiff

9  Brandon Banks subsequently spoke to a service department representative who advised

10  him that the vehicle had displayed a Diagnostic Test Code C1179, which the service

11  representative presented as the ABS control unit code for the Delta Stroke Sensor.  This

12  individual advised Mr. Banks that he had seen this failure on numerous other occasions,

13  and that Nissan had issued an update relating to this problem, but that even after the

14  update, which provided the corrective measures to be taken, vehicles would still return

15  back with Delta Stroke Sensor failures.  He advised that the only way to fix the problem

16  was to replace the Delta Stroke Sensor at a price in excess of $1,000.  Future Nissan

17  was asked and declined to cover the replacement of the Delta Stroke Sensor.  Plaintiffs

18  were advised to take up the issue of the repair with the NISSAN defendants on Nissan's

19  Consumer Affairs Hotline.

20         15.    On February 25, 2011, Plaintiff Brandon Banks contacted Pauline Reed at

21  Nissan Consumer Affairs.  He was assigned customer case no. 7104313.  Reed

22  represented to Mr. Banks that he would receive a return call within one business day.

23         16.    Plaintiff Brandon Banks did not hear back from Nissan until March 1, 2011,

24  at which time  a person named Cory Heinz, describing herself as a regional specialist,

25  contacted Mr. Banks.  She expressed her concern with the dealership for not using what

26  she referred to as "good faith" dollars to fix the problem.  Ms. Heinz advised Brandon

27  Banks that she needed verification and details of the diagnosis from Future Nissan and

28  the approximate cost, and would get back to Mr. Banks by March 3, 2011.

Class Action Complaint for Damages              6

17.     On March 4, 2011, Brandon Banks placed a follow-up phone call to Cory Heinz, who advised Mr. Banks that the service manager at Future Nissan needed him to bring the truck in for a second formal diagnosis.  Plaintiffs immediately complied.

18.     On Monday, March 7, 2011, Brandon Banks received a call from Future Nissan.  They advised him that they were waiting on Nissan to make a decision.

19.     On March 8, 2011, Brandon Banks received another call from Cory Heinz. Heinz advised that Nissan had made the decision to deny coverage for  the cost of replacing and repairing the Delta Stroke Sensor.  She advised Mr. Banks that this decision had been based upon various factors including that their warranty had allegedly expired.  Pressed, Ms. Heinz told Brandon Banks that the decision was ultimately a business decision, that they had to "justify giving these dollars" and could not do so taking into consideration plaintiffs' lack of history of "brand" and "service" loyalty.  In his discussions with Nissan Consumer Affairs, Plaintiff  Brandon Banks had been repeatedly asked how many Nissan vehicles the Banks had owned thus implying that had plaintiffs beem "loyal" repeat customers the cost of repairing or replacing the Delta Stroke Sensor would have been covered.  As a result of the NISSAN DEFENDANTS' denial, Plaintiffs were forced to go through with the replacement of the Delta Stroke Sensor in an effort to render the vehicle safe to drive at a final cost of $967.13, including Nissan OEM parts, which the Banks paid in full to Future Nissan on or about March 8, 2011.

20.     The Delta Stroke Sensor is an electronic component of AFFECTED VEHICLES.  If the Delta Stroke Sensor fails, the sensor is not able to tell the brake vacuum booster to open/close the accumulator on the master cylinder.  The accumulator, which regulates brake pressure, does not get an accurate readout, thereby preventing the accumulator (a pressure reservoir) from releasing the increased pressure on the master cylinder.  This failure causes the brakes not to perform in the manner experienced by Plaintiff Erin Banks.  The failure of the Delta Stroke Sensor results in a diagnostic error code of C1179, the same code which plaintiffs were advised

1   had been retrieved from their Nissan vehicle immediately after Erin Banks, without

2   intention or desire, drove her AFFECTED VEHICLE through a busy controlled

3   intersection because of the Nissan Armada's brake system failure.

4        21.     Defendants were fully aware of the problems and defects related to

5   Diagnostic Test Code C1179 and the resulting issue related to the Delta Stroke Sensor.

6   Nissan Technical Service Bulletin NTB06-040 (hereinafter "TSB") addressed the

7   diagnostic procedure by which the Nissan defendants determined a failure exists in the

8   braking control system of the AFFECTED VEHICLES of which the Delta Stroke Sensor is

9   a component. The TSB provides a procedure whereby the Vehicle Dynamic Control

10  "VDC" / Antilock Brake System "ABS" is reprogrammed to accept corrective data to

11  remedy the symptomatic diagnosis or DTC1179.  The reprogramming process requires

12  the measurement of continuity between the ABS actuator and electric unit control and

13  the Delta Stroke Sensor. The process further indentifies the defective part as being the

14  wiring harness, Delta Stroke Sensor or the ABS actuator and electric control unit. In this

15  case, the Delta Stroke Sensor was identified by the service department representative

16  at Future Nissan. Taken in consideration with the Nissan recommended repair process

17  for a defective condition identified as C1179 the Delta Stroke Sensor should have been

18  replaced rather than "reprogramming the data" as setout in the TSB.

19       22.     Plaintiffs would not have purchased the vehicle or extended warranty, or,

20  in the alternative, would have paid much less to purchase the vehicle had they known

21  of the safety hazard posed by the defective and faulty Delta Stroke Sensor.  Plaintiffs

22  and **CLASS** members were denied information material to their purchase and

23  willingness to use their AFFECTED VEHICLES, information which was material to a

24  reasonable consumer in making a decision to purchase or use such a VEHICLE.

25  Plaintiffs were further forced to repair their vehicle in the amount of over $950.00 in

26  order to render their AFFECTED VEHICLE safe only after (not reasonable disclosure

27  from Nissan) a frightening, dangerous personal experience led them to discover on their

28  own the material safety hazard posed by their AFFECTED VEHICLE.

Class Action Complaint for Damages        8

23.    The NISSAN DEFENDANTS were aware of the problems with the Delta Stroke Sensor.  This is confirmed by multiple complaints to Future Nissan and other complaints which, after learning of their own problem, plaintiffs have discovered have been made to defendants.  Further evidence of Defendants' notice of and knowledge of this problem is the existence of a Technical Service Bulletin covering this specific failure. The date of this technical service bulletin, a 22 page document which would have taken significant time and resources in which to develop and implement prior to its issuance, is May 12, 2006.  Plaintiffs further contend that Defendants have, for a long period of time, had knowledge that the Technical Service Bulletin fix was not effective given continued and repeated failures of the Delta Stroke Sensor after AFFECTED VEHICLES had been subjected to the protocol called for by the Technical Service Bulletin.  Rather than disclose this critical safety defect and recall AFFECTED VEHICLES as Defendants should have, Defendants made a conscious decision to ignore the problem at the expense of the safety of its customers, those operating AFFECTED VEHICLES, and the public at large. In so conducting themselves, despite significant and exclusive knowledge of this material safety defect, Defendants, and each of them, have fraudulently concealed this safety problem, and otherwise have prevented reasonable consumers from discovering this hazard until such time as the defect manifests itself to the individual owner or operator through the frightening and dangerous experience of unexpected and unanticipated braking failure.

**CLASS ALLEGATIONS**

24.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek certification of a national **CLASS** defined as follows:

> **All consumer residents in the United States who own AFFECTED VEHICLES and those who do not presently own but incurred monetary loss caused by the failure of the delta stroke sensor in their AFFECTED VEHICLE, including repair or replacement and other pecuniary loss associated with such failure.  This definition specifically excludes any and all persons who assert personal injury claims arising from or relating to the failure of the delta stroke sensor in their AFFECTED VEHICLE.**

1    25.    This action has been brought and may properly be maintained and
2  certified as a **CLASS** action because:

3          (a)    The questions and issues of law or fact raised herein are of a
4                 common or general interest, affecting a large **CLASS** of individuals
5                 and the public at large;
6          (b)    The **CLASS** consists of a sufficiently large group of individuals,
7                 believed to exceed 25,000 members, and is so large that it is
8                 impractical to join all members of the **CLASS** before the Court as
9                 individual plaintiffs.  Plaintiffs are informed and believe that the
10                identity of **CLASS** members is readily ascertainable from various
11                sources including the examination Nissan's ownership records,
12                and/or via simple notice by publication;
13         (c)    The questions of law or fact common to the **CLASS** are
14                substantially similar and predominate over those questions
15                affecting only specific members of the **CLASS**.
16         (d)    The **CLASS** is united by a community of interest in obtaining
17                appropriate equitable relief including injunctive relief including
18                recall of AFFECTED VEHICLES and restitution, damages, and other
19                available relief designed to redress the wrongful conduct of
20                Defendants.
21         (e)    Plaintiffs are members of the **CLASS**, and their claims are typical of
22                the **CLASS**.
23         (f)    Named Plaintiffs will fairly and adequately represent the claims of
24                the **CLASS**, and protect the interests of the **CLASS** without
25                exercising personal interest or otherwise acting in a manner
26                inconsistent with the best interests of the **CLASS** generally.
27         (g)    Named plaintiffs have retained attorneys experienced in the
28                litigation of **CLASS** and representative claims and in the area

Class Action Complaint for Damages            10

1         consumer protection litigation who have agreed to and will

2         responsibly and vigorously advocate on behalf of the **CLASS** as a

3         whole.

4     (h)    Without **CLASS** certification, the prosecution of separate consumer

5         actions by individual members of the **CLASS** would be

6         impracticable and financially difficult, and create a risk of repetitive,

7         inconsistent and varying adjudications.  This would have the effect

8         of establishing incompatible standards of conduct for Defendants,

9         discouraging the prosecution of meritorious but small claims,

10       and/or result in adjudications which would be dispositive of the

11       interests of other **CLASS** members not parties to the adjudication,

12       or otherwise substantially impair the ability of **CLASS** members to

13       protect their rights and interests.

14    (i)    Defendants have acted or refused to act on grounds generally

15       applicable to the **CLASS**, thereby making the award of equitable

16       relief and/or restitution appropriate to the **CLASS** as a whole.

17    (j)    The **CLASS** action procedure is superior to other methods of

18       adjudication, and specifically designed to result in the fair, uniform

19       and efficient adjudication of the claims presented by this complaint.

20       This **CLASS** action will facilitate judicial economy and preclude the

21       undue financial, administrative and procedural burdens which

22       would necessarily result from a multiplicity of individual actions.

23               <u>**FIRST CAUSE OF ACTION**</u>

24               **(Unfair Business Practices)**

25     26.    Plaintiffs individually and for the **CLASS** hereby incorporate by reference

26 paragraphs 1-25, as though fully set forth herein, and aver against Defendants, and

27 each of them.

28     27.    California Business & Professions Code section 17200 precludes unfair

1  competition, i.e., the employment of any unlawful, unfair or fraudulent business acts or
2  practices; and any unfair, deceptive, untrue or misleading advertising violating Cal. Bus.
3  & Prof. Code section 17500.  This prohibition extends to any act, omission or conduct or
4  pattern of activity engaged in within California which affects the rights of consumers
5  within the State of California and elsewhere.

6        28.    In marketing and selling the AFFECTED VEHICLES, and in otherwise
7  causing said VEHICLES to be placed into and maintained in the stream of commerce for
8  use by consumers in the United States without disclosing the serious safety hazard they
9  posed, and in continuing to conceal this critical safety information regarding the
10  dangers associated with the use of AFFECTED VEHICLES, Defendants, and each of them,
11  them, made available for consumer use a dangerous and patently unsafe product which
12  is not safely useable for its intended purpose without recall and replacement of the
13  Delta Stroke Sensor.  Defendants, individually and collectively, were and remain
14  obligated to disclose their knowledge regarding the hazard associated with said
15  VEHICLES because of the public's reasonable expectation that the VEHICLES' braking
16  system would not fail to work under reasonable and customary operation by drivers
17  who did not know, contrary to defendants, that a defective part could reasonably and
18  expectedly disable the braking system's effectiveness.   In failing to disclose this critical
19  safety issue which was known and readily apparent to Defendants but not reasonable
20  consumers, including Plaintiffs and the **CLASS**, the NISSAN defendants engaged in
21  fraudulent conduct under Cal. Bus. & Prof. Code section 17200.  Plaintiffs incorporate
22  herein as though fully set forth herein paragraphs 12-23, supra, as evidence of the
23  pattern of concealment perpetrated by the NISSAN DEFENDANTS, and each of them,
24  against them and, Plaintiffs reasonably believe against, the **CLASS** as a whole.

25        29.    The aforementioned conduct is unlawful within the meaning of the UCL in
26  that Defendants have and continue to violate Cal. Civil Code section 1750, et seq.
27  (hereinafter "CLRA") to the extent that defendants and each of them represented, by
28  the omission and concealment of critical safety information well-known to defendants,

1   that the AFFECTED VEHICLES: (a) had characteristics, uses or benefits that said

2   VEHICLES  did not have in violation of Section 1770(a)(5) of the CLRA; and (b) were of

3   a particular standard, quality or grade when they were of another in violation of

4   1770(a)(7) of the CLRA.  Plaintiffs aver on information and belief and based upon the

5   allegations contained in paragraph 19, supra, that defendants have engaged in conduct

6   unlawful within the meaning of the UCL by establishing and maintaining a secret

7   warranty program in violation of Ca. Civ. Code section 1795.90, et seq.

8        30.    Defendants' conduct is unfair within the meaning of the UCL in that the

9   the alleged consumer injury is substantial, creating an unreasonable risk for

10  catastrophic physical injury  and death to any persons using or coming into contact with

11  AFFECTED VEHICLES.  There is no countervailing benefit to Defendants to conduct

12  themselves in the wrongful manner averred herein.

13       31.    Were it not for the unfair competition of Defendants, the **CLASS** would

14  not have purchased, paid to warrant,  nor continued to use AFFECTED VEHICLES at all

15  or only after said VEHICLES were rendered safe by the replacement of the Delta Stroke

16  Sensor with a part which was not defective and faulty, and reasonably likely to fail.

17       32.    The members of the **CLASS** have and will continue to suffer injury in fact

18  and lose money as a direct result of Defendants' unfair competition in that each has

19  expended money to purchase and/or paid to warrant AFFECTED VEHICLES, purchase

20  parts and incur costs to repair the defect, and/or will be caused to expend money

21  relating to the replacement of the Delta Stroke Sensor with a part that is not defective

22  or faulty.

23       33.    As a result of Defendants' unfair competition, Plaintiffs and the **CLASS** are

24  entitled to appropriate equitable relief including injunctive relief, and available monetary

25  relief in the form of restitution (including fluid recovery when certified as a **CLASS**

26  action).  Plaintiffs are also entitled to recover penalties as well as an award of attorneys'

27  fees for prosecuting this action.

28  ///

Class Action Complaint for Damages                 13

## SECOND CAUSE OF ACTION

### (Violation of the Consumers Legal Remedies Act)

34.     Plaintiffs, individually and for the **CLASS**, hereby incorporate by reference paragraphs 1-33, as though fully set forth herein, and averred against Defendants, and each of them.

35.     California Civil Code Section 1750, et seq., precludes Defendants from representing that goods have characteristics and benefits which they do not have or were of a particular standard, quality or grade when they were of another in transactions which are intended to result, or which have resulted, in the sale and use of AFFECTED VEHICLES.

36.     In engaging in the conduct described herein, as more specifically set forth in paragraphs 12-23, and 28-30 of this Complaint, Defendants, and each of them, violated the Consumers Legal Remedies Act including Civil Code section 1770(a)(5) and (a)(7).

37.     Were it not for the misconduct of Defendants, Plaintiffs and the **CLASS** would not have purchased or warranted VEHICLES, or continued to use AFFECTED VEHICLES without corrective repairs.

38.     Plaintiffs and members of the **CLASS** have suffered and will continue to suffer injury in fact, and lose money and suffer damages as a direct result of defendants' unfair competition in that each has expended money to purchase and/or warrant AFFECTED VEHICLES, and have or will be caused to expend money associated with effecting repairs to said VEHICLES so that they may be safely operated.

39.     Notice in accordance with Cal. Civil Code section 1782 has previously been given on or about April 6, 2011, and this Complaint will be amended to incorporate a prayer for damages in the event Defendants, and each of them, do not undertake corrective action as specified in Plaintiffs' notice within thirty days of the notice.

40.     Defendants, and each of them, know and have known, or have otherwise consciously ignored and disregarded, the patent safety hazard relating to the braking

Class Action Complaint for Damages                14

1   system in AFFECTED VEHICLES which Plaintiffs contend have been known to

2   Defendants but concealed from the motoring public and owners of AFFECTED VEHICLES

3   since before May 2006.  Defendants made the financially driven decision to conceal the

4   defect and to not repair or recall said VEHICLES fraudulently, recklessly and in

5   conscious disregard of **CLASS** members, their family, friends and others who drove

6   with them, and anyone else within the zone of danger relating to the operation of

7   AFFECTED VEHICLES. Defendants have and continue to make irresponsible decisions by

8   refusing to repair known problems in known AFFECTED VEHICLES based upon irrational

9   and  offensive criteria such as perceived customer loyalty history.    This conduct was

10   engaged in under the direction and with the understanding and knowledge of

11   Defendants' officers and directors who made profit-directed decisions in conscious

12   disregard of the safety and well-being of any person on or near any roadway in the

13   United States on which one or more AFFECTED VEHICLES were being operated,

14   entitling the **CLASS** to an award of punitive damages when the Ca. Civ. Code section

15   1782 notice expires without compliance by defendants or any of them.

16       41.   As a result of the violations of the Consumers Legal Remedies Act

17   engaged in by Defendants, the **CLASS** is entitled to injunctive relief, monetary and

18   punitive damages, and an award of attorneys' fees.

19   **THIRD CAUSE OF ACTION**

20   **(Unjust Enrichment)**

21       42.   Plaintiffs, individually and for the **CLASS**, hereby incorporate by reference

22   paragraphs 1-41, as though fully set forth herein, and averred against Defendants, and

23   each of them.

24       43.   Defendants have been, and continue to be, unjustly enriched, to the

25   detriment of and at the expense of the **CLASS** members, as a result of their conduct

26   directed against the **CLASS** as a whole and its resulting collection of money from the

27   sale, service, maintenance and repair of AFFECTED VEHICLES, and in terms of

28   warranties the **CLASS** may have purchased in connection with said VEHICLES.

Class Action Complaint for Damages       15

44.     Defendants have unjustly benefitted through the unlawful and/or wrongful collection of money from the sale of AFFECTED VEHICLES, and continue to so benefit to the detriment and at the expense of **CLASS** members.

45.     Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiffs and **CLASS** members, who seek disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seek restitution and/or rescission for the benefit of the Plaintiffs and **CLASS** members, in an equitable and efficient fashion to be determined by the Court.

46.     Plaintiffs and the **CLASS** members are entitled to the imposition of a constructive trust upon Defendants such that their enrichment, benefit and ill-gotten gains may be allocated and distributed equitably by the Court to and/or for the benefit of **CLASS** members.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs and the **CLASS** pray judgment against Defendants, and each of them, hereinafter as follows:

**ON THEIR FIRST CAUSE OF ACTION:**

1.     Equitable and/or injunctive relief as appropriate;

2.     Monetary relief including restitution and fluid recovery;

3.     Attorneys' fees and costs of suit;

4.     Interest; and

5.     Such other and further relief as the court deems proper.

**ON THEIR SECOND CAUSE OF ACTION:**

1.     Injunctive relief;

2.     Attorneys' fees, and costs and expenses of suit;

3.     Interest; and

4.     Such other and further relief as the court deems proper.

///

Class Action Complaint for Damages                    16

**ON THEIR THIRD CAUSE OF ACTION:**

    1.      Equitable relief in the form of restitution and disgorgement of profits;

    2.      Consequential damages;

    3.      Imposition of a constructive trust over the revenues of sale and resulting profits received as a result of Defendants' wrongful conduct;

    4.      Attorneys fees, costs, expenses and interest; and

    5.      Such other and further relief as the court deems proper.

Date: April 22, 2011                    CLAYEO C. ARNOLD
A Professional Law Corporation

                                   By: _____
                                       Clifford L. Carter
                                     Attorney for Plaintiffs and the Class

### DEMAND FOR JURY TRIAL

    Plaintiffs demand trial by jury of each cause of action set forth in this complaint and the issues in this matter.

Date: April 22, 2011                    CLAYEO C. ARNOLD
A Professional Law Corporation

                                     By: _____
                                       Clifford L. Carter
                                       Attorney for Plaintiffs and the Class