G. CHARLES NIERLICH, SBN 196611
gnierlich@gibsondunn.com
RACHEL A. FLIPSE, SBN 273659
rflipse@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: (415) 393-8239
Facsimile: (415) 393-8306

TIMOTHY W. LOOSE, SBN 241037
tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant,
NISSAN NORTH AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BRANDON BANKS and ERIN BANKS, individually and on behalf of a class of similarly situated consumers,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>NISSAN NORTH AMERICA, INC.; NISSAN MOTOR CO., LTD.; NISSAN DESIGN AMERICA, INC.,<br><br>　　　　　　Defendants. | CASE NO. C 11-2022 PJH<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM AND FOR INSUFFICIENT SPECIFICITY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Fed. R. Civ. P. 9(b); 12(b)(6)]<br><br>Hearing Date:　　October 12, 2011<br>Hearing Time:　　9:00 a.m.<br>Location:　　　　Courtroom 3<br>Judge:　　　　　Hon. Phyllis J. Hamilton<br><br>Trial Date:　　　None set |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I. INTRODUCTION ............................................................................................................... 2

II. STATEMENT OF ALLEGED FACTS ............................................................................. 5

III. LEGAL STANDARD ....................................................................................................... 6

IV. PLAINTIFFS FAIL TO STATE A UCL OR CLRA CLAIM ......................................... 6

    A.    A Manufacturer Has No Duty Under The UCL Or CLRA To Disclose Defects Manifesting After The Limited Warranty Period Expires ............................................. 7

    B.    Plaintiffs' UCL And CLRA Claims Are Not Pleaded With The Requisite Specificity ..................................................................................................................... 10

V. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT ................ 11

VI. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. ___, 129 S. Ct. 1937 (2009) .................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 6, 8

*Berenblat v. Apple, Inc.*,
  No. 08-4969JF, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 7, 2010) ...................... 10

*Brothers v. Hewlett-Packard Co.*,
  No. C 06-2254 RMW, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ........................... 10

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) .................................................................................. 1, 2, 7

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ........................................................................ 1, 2, 3, 7, 9, 12

*Dinosaur Dev., Inc. v. White*,
  216 Cal. App. 3d 1310 (1989) ......................................................................................... 11

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................................................ 9

*Hameed v. IHOP Franchising, LLC*,
  2010 U.S. Dist. LEXIS 115123 (E.D. Cal. Oct. 28, 2010) ............................................. 11

*Lauriedale Assocs., Ltd. v. Wilson*,
  7 Cal. App. 4th 1439 (1992) ............................................................................................ 11

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) .......................................................................................... 11

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ............................................................................................. 6

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ...................................................................... 10, 12

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................................. 6

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .............................................................................. 6, 10, 11

*Walker v. USAA Cas. Ins. Co.*,
  474 F. Supp. 2d 1168 (E.D. Cal. 2007) ........................................................................... 11

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................................. 6

Cal. Civ. Code § 1750 .............................................................................................................. 6

Cal. Civ. Code § 1770(a) ........................................................................................................ 11

**TABLE OF AUTHORITIES**
**[Continued]**

Page(s)

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 6
Fed. R. Civ. P. 9(b) ................................................................................................... 1, 6, 10

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 12, 2011, at 9:00 a.m., in Courtroom 3 of the above-captioned court, located at 1301 Clay St., Oakland, California 94612, or as soon thereafter as may be heard, Defendant Nissan North America, Inc. ("Nissan") will, and hereby does, move this Court for an order under Federal Rule of Civil Procedure 12(b)(6), dismissing all of the claims and causes of action contained in the First Amended Class Action Complaint ("FAC") filed in this action by Plaintiffs, Brandon and Erin Banks ("Plaintiffs"), or in the alternative for additional specificity as required by Rule 9(b).

The motion is based, *inter alia*, on the fact that the FAC fails to state a claim and should be dismissed under Rule 12(b)(6). Plaintiffs allege that they were injured by Nissan's failure to disclose that the Delta Stroke Sensor in their vehicle could fail after the extended warranty period expired. But the law does not support this claim; the law in California is that, absent very specific circumstances not present here, a manufacturer cannot be held liable for failing to disclose potential problems or defects that might arise at some point in time after the product's warranty period expires. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006). Moreover, Plaintiffs' unjust enrichment claim should be dismissed because there is no such cause of action under California law. Consequently, Nissan's motion to dismiss should be granted. In the alternative, this Court should dismiss the FAC and require additional specificity, pursuant to Rule 9(b), with respect to Plaintiffs' assertions that Nissan supposedly concealed facts from Plaintiffs. Nissan's motion is based on this Notice, the following Memorandum of Points and Authorities, all matters of which judicial notice may be taken, the papers and pleadings on file herein, and on such additional papers and arguments as may be presented at or before the hearing of this matter.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. INTRODUCTION

Plaintiffs Brandon Banks and Erin Banks ask this Court to judicially modify the terms of a manufacturers' warranty and an extended service contract—both of which have expired—to reimburse them for a repair they made to a seven-year-old Nissan vehicle. California law does not permit Plaintiffs' effort to rewrite the warranty and service contract to provide more coverage than the parties bargained for. The First Amended Class Action Complaint should be dismissed.

Mr. Banks and Mrs. Banks purchased a used 2004 Nissan vehicle in 2006. In 2011, after Mrs. Banks allegedly experienced difficulty braking on one occasion, Mr. and Mrs. Banks replaced a sensor (called a "Delta Stroke Sensor") that, among other things, helps regulate the feel of the brake pedal for the driver. Plaintiffs asked the dealer, and then Nissan North America, Inc. ("Nissan"), to pay for the out-of-warranty repair. The dealer and Nissan declined Plaintiffs' requests, and this purported class action lawsuit followed. Plaintiffs' First Amended Class Action Complaint ("FAC") acknowledges that the warranty has expired, and does not raise a breach of warranty claim. Nor does the FAC assert a breach of contract claim based on the extended service contract. Instead, Plaintiffs rely on consumer protection statutes in a thinly veiled effort to get leverage against Nissan and perform an end run around well-established warranty law.

Plaintiffs' theory is that Nissan should bear the cost of replacing the Delta Stroke Sensor in their vehicle—and in the vehicles of a nationwide putative class—because Nissan supposedly had a duty to tell them that the sensor could malfunction in the future. Plaintiffs have failed to state allegations to support any such duty. A manufacturer generally cannot be held liable under California's Unfair Competition Law ("UCL") or Consumers Legal Remedies Act ("CLRA") for failing to disclose potential problems or defects that might arise after the warranty period expires. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 836, 839 (2006) (holding that the only expectation automobile buyers could have about their purchase was that it would function properly for the length of the

express warranty).[1]  Because the alleged defect in this case arose only after the expiration of both the warranty and the additional service contract, these cases render the FAC insufficient on its face.

A narrow exception to this general rule, neither applicable here nor adequately alleged, is that a manufacturer may be required, under certain circumstances, to disclose a defect that poses an unreasonable risk to a consumer's safety.  *Daugherty*, 144 Cal. App. 4th at 835–36.  Plaintiffs have not adequately alleged that the potential failure of the Delta Stroke Sensor—which does not cause total brake failure but instead may affect the feel of the brake pedal to the driver—raises such substantial safety concerns as to warrant a special duty to disclose beyond the warranty period.

Indeed, the facts alleged in the FAC belie any alleged unreasonable safety issue with Plaintiffs' vehicle.  Plaintiffs allege that the sensor failed on February 24, 2011, purportedly causing Mrs. Banks to "coast" through a red light at an intersection.  (FAC ¶ 13.)  Notwithstanding Plaintiffs' claim that Mrs. Banks was unable to stop her vehicle before the red light in that one instance, Plaintiffs ultimately brought the vehicle to a stop without injury, and then continued to drive the vehicle for at least another week before having the sensor replaced, including two separate trips to the dealership.  (*Id.* ¶¶ 14–19.)

Perhaps seeking to bolster their "safety" claims, Plaintiffs add a conclusory allegation that the Delta Stroke Sensor has a "high and unreasonably high incidence of failure during normal and customary use."  (*Id.* at 2:9–10.)  But the only specific factual allegation they provide that is even arguably related to this broad assertion is that Nissan issued a Technical Service Bulletin to address the diagnostic error code encountered by Plaintiffs.  (*Id.* ¶ 21.)  Plaintiffs have not pleaded that Nissan only issues Technical Service Bulletins when the issue involved presents an unreasonable safety risk or an unreasonably high incidence of failure.  Nor do Plaintiffs allege that this specific Technical Service Bulletin identified an unreasonable safety risk.[2]  Indeed, Plaintiffs' allegation

---

[1] Indeed, the FAC confirms that Plaintiffs understood that the vehicle's warranty had a limited term and that they did not expect it to cover all repairs for the life of the vehicle: when they bought the used vehicle, they also purchased an additional service contract to provide coverage for repairs beyond the warranty period and up to 75,000 miles.  (FAC ¶ 12.)

[2] Moreover, the same allegation in the FAC acknowledges that this error code may not even indicate a problem with the Delta Stroke Sensor, or whether the issue is hazardous to the driver.
[Footnote continued on next page]

concerning the Bulletin belies Plaintiffs' assertions that Nissan somehow failed to inform or fraudulently concealed any issue with the Delta Stroke Sensor, since the Bulletin was publicly available (as evidenced by the fact that Plaintiffs obtained it and reference it in the FAC).

In sum, Plaintiffs do not adequately allege that Nissan had a duty to tell them that the Delta Stroke Sensor might need to be replaced at some point in time while they owned the vehicle, even after the warranty period expired. Thus, they fail to state a claim under either the UCL or CLRA.

The FAC also includes a claim for unjust enrichment, but there is no independent cause of action for unjust enrichment under California law. Even if there were, requiring Plaintiffs to bear the cost of an out-of-warranty, beyond service contract repair when their vehicle performed as warranted during the periods of the warranty and service contract hardly justifies a claim for unjust enrichment.

At bottom, Plaintiffs invite this Court to write a new warranty or service contract for them. But the facts as pleaded in the FAC show why this Court should decline this invitation: Plaintiffs bought a used vehicle with an express manufacturers' warranty for a limited term; they also bought an extended service contract to provide them with additional coverage after the original warranty period expired; they drove the used vehicle without incident for five years; they replaced a sensor after the warranty and extended service contract had expired; and now they ask this Court to retroactively extend their warranty or service contract, to provide coverage beyond that negotiated by the parties.[3] There is no basis under the UCL, CLRA, or for unjust enrichment for the relief Plaintiffs seek. Nissan respectfully requests that this Court grant its motion to dismiss without leave to amend.

---

[Footnote continued from previous page]
(FAC ¶ 21 (stating that the error code was addressed by a process which "further identifies the defective part as being the wiring harness, Delta Stroke Sensor or the ABS actuator and electric control unit").)

[3] Notably, Plaintiffs do not claim to have had any problems with the vehicle since the sensor was replaced on March 8, 2011; they do not assert that anyone advised Plaintiffs against driving their vehicle; and they do not allege a single collision or injury affecting them or anyone else that was the result of a malfunctioning Delta Stroke Sensor, despite the fact that these allegations concern a used vehicle on the road for several years and tens of thousands of miles. Indeed, Plaintiffs assert no personal injury claims for themselves or any purported class members, and they expressly exclude any and all such claims from the class definition. (FAC ¶ 24.)

## II.  STATEMENT OF ALLEGED FACTS

Plaintiffs allege that they bought a 2004 Nissan Armada in October 2006.  (FAC ¶ 12.)  The FAC claims that at the time of Plaintiffs' purchase, the odometer showed that the vehicle already had been driven about 23,000 miles.  (*Id.*)  Plaintiffs elected to purchase additional protection that would cover the vehicle until it reached 75,000 miles.  (*Id.*)  Plaintiffs acknowledge that the availability of coverage for an additional 75,000 miles "was a material and critical factor in their decision to purchase" their vehicle, thereby demonstrating their concern that they otherwise would have had to pay for repairs when the original warranty expired.  (*Id.*)  Plaintiffs owned the vehicle for more than four years, put tens of thousands of miles on it, and drove it past the contract's 75,000 mile expiration point.  (*See id.* ¶ 19.)

After the warranty and the service contract expired, Plaintiffs experienced a problem with the Delta Stroke Sensor in their vehicle.  (FAC ¶ 14.)  Plaintiffs allege that the sensor malfunctioned on February 24, 2011, and that "despite applying the brakes in a manner reasonably anticipated to bring the vehicle to a complete stop," Mrs. Banks traveled through a red light.  (*Id.* at 2:13–17.)  There was no collision and nobody was injured.  (*Id.* at 2:16–18.)  Plaintiffs do not claim that the failure of the sensor, which regulates the feel of the brake pedal, resulted in Mrs. Banks's inability to stop the vehicle, or that Mrs. Banks was in fact unable to stop the vehicle.  They allege solely that when Mrs. Banks "applied the brakes in a manner reasonably anticipated" by her to stop the vehicle, it did not immediately stop.

Following this incident, Plaintiffs state that they took the vehicle to their local Nissan dealer and service center for diagnosis and repair.  (*Id.* ¶ 14.)  The mechanic diagnosed the condition as a Delta Stroke Sensor failure, and recommended that the Plaintiffs replace the part at a cost of approximately $1,000.  Plaintiffs did not want to pay this amount, and, after the dealer declined to repair the sensor for free as they requested, they drove the vehicle home and tried to negotiate with Nissan's customer affairs representatives to have Nissan pay for the repair.  (*Id.* ¶¶ 14–19)  About a week later, on March 4, 2011, Plaintiffs drove the vehicle back to the dealer for a second diagnosis, at Nissan's request.  (*Id.* ¶ 17)  Following the second trip to the mechanic, Nissan informed Plaintiffs that the vehicle's limited warranty had expired, and that the Nissan dealership could replace the

5

sensor but could not do so for free.  (*Id.* ¶ 19.)  Plaintiffs paid $967.13 to have the Delta Stroke Sensor replaced on March 8, 2011, and they filed this lawsuit seven weeks later, on April 25, 2011.  (*See id.*)  Plaintiffs' FAC claims that Nissan intentionally concealed the purported problems with the Delta Stroke Sensor, and asserts causes of action for violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*), the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), and Unjust Enrichment.  (FAC ¶¶ 26–46.)

### III.  LEGAL STANDARD

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Consequently, a motion to dismiss should be granted when a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While allegations of material fact are assumed to be true, and viewed in the light most favorable to the plaintiff, the court need not accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When plaintiffs allege a claim sounding in fraud, they must plead the circumstances constituting fraud with particularity.  Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (holding that Rule 9(b) requirement "that the circumstances of the fraud must be stated with particularity" applies to state-law claims brought before a federal court).

### IV.  PLAINTIFFS FAIL TO STATE A UCL OR CLRA CLAIM

Plaintiffs' UCL and CLRA claims suffer from a common defect—they are predicated on Nissan's alleged concealment, but the FAC fails to allege any facts indicating that Nissan had a duty to disclose.  Absent such a duty, Plaintiffs' omission-based UCL and CLRA claims fail.  Moreover, the claims fail for the independent reason that the FAC has failed to identify any particular facts showing that Nissan knowingly concealed a problem with the Delta Stroke Sensor from Plaintiffs.

A.  **A Manufacturer Has No Duty Under The UCL Or CLRA To Disclose Defects Manifesting After The Limited Warranty Period Expires**

Plaintiffs' vehicle was more than seven years old, past the warranty period, and past Plaintiffs' selected service contract period when the Delta Stroke Sensor allegedly failed. Nevertheless, Plaintiffs argue that Nissan should bear the cost of repair based on a theory that Nissan had a duty to tell them that the sensor in their vehicle might stop working at some point after the extended warranty period expired. (FAC ¶ 23; *see also id.* ¶ 22 ("Plaintiffs would not have purchased the vehicle or the extended warranty" or "would have paid much less" had they known that the Delta Stroke Sensor was "defective and faulty").)

California law, however, forecloses Plaintiffs' argument that Nissan had any such duty. *Daugherty*, 144 Cal. App. 4th 824. In *Daugherty*, the plaintiff alleged that Honda violated the UCL and CLRA by failing to disclose that certain vehicles were equipped with defective engines, and that these known defects eventually caused catastrophic engine failure after the limited warranty period expired. *Id.* at 833. The court rejected this argument, finding that "the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair business practice under the UCL." *Id.* at 839. The court reached the same conclusion with respect to the CLRA, and affirmed the trial courts' dismissal of the claims with prejudice. *Id.* at 836–37, 840.

The Ninth Circuit followed *Daugherty* in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008). *Clemens* likewise involved the post-warranty failure of engine components, and the plaintiff alleged that the manufacturer committed fraud and violated the UCL by failing to disclose the problem. *Id*. at 1022. Based on the reasoning of *Daugherty*, the Ninth Circuit found that a manufacturer does not violate the UCL by failing to inform consumers that certain parts may fail after the limited warranty expires, because "'[t]he only expectation buyers could have had about [a particular] engine was that it would function properly for the length of [the manufacturer]'s express warranty[.]'" *Id.* at 1026 (quoting *Daugherty*, 144 Cal. App. 4th at 838).

Plaintiffs here offer the same theory that was rejected in *Daugherty* and *Clemens*. Those cases establish that Plaintiffs must do more than point to the existence of an alleged problem manifesting outside of the warranty period if they are to state a claim under the UCL or CLRA, and that is all that Plaintiffs have done in the FAC. (*See* FAC ¶¶ 21–22.)

Nevertheless, Plaintiffs likely will respond by arguing that their case is distinguishable from *Daugherty* and *Clemens*—and the many cases following *Daugherty* and *Clemens*—because they have alleged a problem that supposedly poses an unreasonable "safety hazard." But Plaintiffs' own allegations show that the assertion is implausible. Even after the vehicle allegedly experienced a Delta Stroke Sensor failure, the Plaintiffs apparently drove it to their local Nissan dealer for inspection. (*See* FAC ¶ 14.) When the dealership diagnosed the problem, there is no allegation that the mechanic told Plaintiffs that the vehicle was no longer safe to drive. Instead, the only allegation is that the mechanic informed Plaintiffs that the cost of repair would be about $1,000. (*Id.*) Plaintiffs did not want to pay to have the sensor replaced, and they brought the vehicle back home, attempting to persuade Nissan's customer service representatives to repair the vehicle for free. (*See id.* ¶ 15.) When Nissan's representatives requested that Plaintiffs "bring the truck in for a second formal diagnosis," Plaintiffs brought the vehicle back to the dealership. (*Id.* ¶ 17.) And so, from the time that the Delta Stroke Sensor allegedly failed on February 25, 2011, until it was replaced on March 8, 2011, the FAC shows that Plaintiffs continued to drive the vehicle without any apparent problems in stopping it. (*See id.*) Plaintiffs admit that even after this experience, they still might have bought the vehicle, although they assert that they "would have paid much less." (*Id.* ¶ 22.) In view of this experience, the claim of a "safety hazard" is simply an unsupported assertion intended to avoid the obvious legal conclusion to Plaintiffs' claim; it is an implausible, naked assertion that should be seen for what it is and weighed accordingly on a motion to dismiss. *Twombly*, 550 U.S. at 570 (dismissing complaint where claim of conspiracy was implausible because the only allegation was that defendants were engaged in parallel conduct); *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (demanding more than "naked assertions devoid of further factual enhancement" in order to avoid dismissal (internal quotations and citations omitted)).

Indeed, Plaintiffs do not allege that a faulty Delta Stroke Sensor rendered their brakes inoperable. Plaintiffs do not allege any collisions or injuries resulting from a malfunctioning Delta Stroke Sensor. They do not even allege that they stopped driving the vehicle. The allegation that a component of the braking system needed to be replaced on Plaintiffs' vehicle after the warranty period does not suffice to establish an unreasonable safety risk triggering a duty to disclose under the UCL or CLRA. *Compare Daugherty*, 144 Cal. App. 4th at 836 (holding that "the risk of 'serious potential damages'—namely the cost of repairs" associated with an engine defect did not oblige car maker to disclose the alleged problem), *with Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096–97 (N.D. Cal. 2007) (holding that GM "had a duty to disclose known defects in its speedometers" that "easily would lead to traveling at unsafe speeds").

The failure to allege facts giving rise to a duty to disclose is fatal to both Plaintiffs' UCL and CLRA claims. Absent a duty to disclose, an omission regarding an allegedly defective automobile part is neither "unlawful," nor "unfair," nor fraudulent. *Daugherty*, 144 Cal. App. 4th at 837–39 ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL."). Similarly, for an omission to be actionable under the CLRA, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id.* at 835. Plaintiffs do not identify any representations made by Nissan, nor do they plead facts that would have required Nissan to advise consumers that the Delta Stroke Sensor may, in the fullness of time, need to be replaced. Nissan's warranty, like other warranties, acknowledges that parts may need to be repaired or replaced. It merely provides a limited period of time during which Nissan assumes the responsibility and attendant cost of so doing.

In short, Plaintiffs do not claim that their vehicle failed to perform as Nissan warranted, they do not claim that Nissan failed to honor the warranty, they do not claim that the service contract was not honored, and they do not raise any plausible allegations to show that an allegedly faulty Delta Stroke Sensor renders a driver unable to stop the vehicle. The only "injury" that Plaintiffs claim to have "suffered" is having to pay for an out-of-warranty repair, which does not, and cannot, form the basis for either a UCL or CLRA claim.

9

MOTION TO DISMISS PLAINTIFFS'                                                        Case No. C 11-2022 PJH
FIRST AMENDED CLASS ACTION COMPLAINT

B.  **Plaintiffs' UCL And CLRA Claims Are Not Pleaded With The Requisite Specificity**

Because Plaintiffs have chosen to ground their CLRA and UCL claims on intentional concealment, those claims must be pleaded with particularity. Fed. R. Civ. P. 9(b); *see also Vess*, 317 F.3d at 1103–04 (holding that Rule 9(b)'s particularity requirement applies to state-law claims that are "grounded in fraud" or "sound in fraud"); *Brothers v. Hewlett-Packard Co.,* No. C 06-2254 RMW, 2006 WL 3093685, at *6 (N.D. Cal. Oct. 31, 2006) (finding that UCL claim based on failure to disclose was grounded in fraud and must be pled with specificity).

The FAC falls short. Plaintiffs offer only the claim that there is an alleged problem with the Delta Stroke Sensor, which Nissan supposedly concealed, and that had the purported problem been disclosed, Plaintiffs either would have paid less for their vehicle or might not have bought it at all. But "allegations of this nature . . . could be made about any alleged design defect in any manufactured product. The heightened pleading requirements of Rule 9(b) were designed to avoid exactly this situation." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008).

Plaintiffs do not offer anything other than vague, conclusory allegations to support their claims of concealment. For example, Plaintiffs boldly allege that Nissan was "aware of the problems with the Delta Stroke Sensor," but do not provide any facts—let alone the particular variety—to support that assertion. Plaintiffs generally assert that there were "complaints to Future Nissan and other complaints" but such allegations merely indicate that some consumers were complaining at an unknown point in time. (FAC ¶ 23.) Those allegations, "[b]y themselves . . . are insufficient to show that [Nissan] had knowledge" of the alleged defect. *Berenblat v. Apple, Inc.*, No. 08-4969JF, 2010 U.S. Dist. LEXIS 46052, at *27 (N.D. Cal. Apr. 7, 2010); *see also Oestreicher*, 544 F. Supp. 2d at 974 n.9 ("Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants."). Likewise, the assertion that Nissan issued a (publicly available) Service Bulletin regarding an error code that sometimes indicated issues with the Delta Stroke Sensor does not impute knowledge or concealment of the alleged defect to Nissan. (FAC ¶ 21.) Plaintiffs fail to allege when Nissan was supposed to make any disclosure to

them regarding their purchase of a used vehicle, as well as what form the disclosure allegedly should have taken, especially when they claim no contact with Nissan before buying their used vehicle.

Plaintiffs' CLRA claims also fail to meet Rule 9(b) for the independent reason that the FAC offers no more than boilerplate recitations of the conduct prohibited by that statute. Specifically, Plaintiffs' CLRA claims allege that Nissan "violated the Consumers Legal Remedies Act including Civil Code section 1770(a)(5) and 1770(a)(7)" (FAC ¶ 36), but Plaintiffs do not allege how Nissan "[r]epresent[ed] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have" (Cal. Civ. Code § 1770(a)(5)), nor do they allege how Nissan "[r]epresent[ed] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," (*id*. § 1770(a)(7)). Plaintiffs must do more in order to satisfy the heightened pleading standard. *Vess*, 317 F.3d at 1103–04.

### V. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiffs' claim for unjust enrichment fails because "there is no cause of action in California for unjust enrichment."[4] *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003); *see also id.* (unjust enrichment is "synonymous with restitution"); *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992) ("The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so."); *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989) (Unjust Enrichment is "a general principle, underlying various legal doctrines and remedies," rather than a remedy itself); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) ("Defendant correctly contends that unjust enrichment is merely a synonym for the remedy of restitution and not a stand-alone cause of action."); *Hameed v. IHOP Franchising, LLC*, 2010 U.S. Dist. LEXIS 115123, at *8 (E.D. Cal. Oct. 28, 2010) ("the law is settled that unjust enrichment is not a cognizable claim under California law").

---

[4]  Nissan does not agree that California law governs all members of the putative nationwide class. Nevertheless, inasmuch as the current pleading identifies only two Plaintiffs, both of whom are California residents choosing to assert their claims under California law, Nissan demonstrates why those claims fail under the law Plaintiffs have chosen.

1   Even if unjust enrichment were to be recognized as an independent cause of action, Plaintiffs' claims still would fail.  The only "unjust" conduct that Plaintiffs allege is the "collection of money from the sale, service, maintenance and repair of AFFECTED VEHICLES," (FAC ¶ 43); however, Nissan is not obligated to repair automobiles or automotive parts that stop working after the limited warranty period expires, nor is it somehow "unjust" for a warranty to expire at some point in time or mileage.  Plaintiffs accordingly cannot show injury from having had to pay for such a repair.  "Indeed, the purpose of a warranty is to contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer."  *Oestreicher*, 544 F. Supp. 2d at 972.  The fact that no unjust conduct is pleaded, coupled with the fact that unjust enrichment is not even a cause of action under California law, provides ample grounds for the Court to dismiss this claim without leave to amend.

### VI.  CONCLUSION

The FAC is based on the theory that Nissan should be required to pay the cost of repairing the Delta Stroke Sensor in Plaintiffs' vehicle, even though that component is alleged to have malfunctioned only after the limited warranty period expired.  This theory is not viable.  And opening the door to it "would change the landscape of warranty and product liability law in California.  Failure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself."  *Daugherty*, 144 Cal. App. 4th at 829 (quoting trial court).

There is thus no cognizable legal theory by which Plaintiffs may recover, and Nissan respectfully requests that its motion to dismiss be granted, without leave to amend.

DATED:  August 31, 2011                                 GIBSON, DUNN & CRUTCHER LLP


By: _____/s/ G. Charles Nierlich_____
G. Charles Nierlich

Attorneys for Defendant,
Nissan North America, Inc.

101131286.8