G. CHARLES NIERLICH, SBN 196611
gnierlich@gibsondunn.com
RACHEL A. FLIPSE, SBN 273659
rflipse@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: (415) 393-8239
Facsimile: (415) 393-8306

TIMOTHY W. LOOSE, SBN 241037
tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant,
NISSAN NORTH AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BRANDON BANKS and ERIN BANKS, individually and on behalf of a class of similarly situated consumers,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.; NISSAN MOTOR CO., LTD.; NISSAN DESIGN AMERICA, INC.,<br><br>Defendants. | CASE NO. C 11-2022 PJH<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM AND FOR INSUFFICIENT SPECIFICITY**<br><br>[Fed. R. Civ. P. 9(b); 12(b)(6)]<br><br>[Request For Judicial Notice filed concurrently]<br><br>Hearing Date:  December 14, 2011<br>Hearing Time:  9:00 a.m.<br>Location:  Courtroom 3<br>Judge:  Hon. Phyllis J. Hamilton<br><br>Trial Date:  None set |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. PLAINTIFFS FAIL TO ESTABLISH ANY EXCEPTION TO THE GENERAL RULE THAT MANUFACTURERS ARE NOT LIABLE FOR OUT-OF-WARRANTY REPAIRS ................................................................................................. 3

III. PLAINTIFFS FAIL TO STATE FACTS SHOWING THAT NNA CONCEALED ANY KNOWLEDGE OF THE ALLEGED SAFETY HAZARDS ...................................... 6

IV. UNJUST ENRICHMENT IS NOT A CAUSE OF ACTION ............................................. 8

V. PLAINTIFFS' CLAIMS FAIL THE HEIGHTENED PLEADING STANDARD ................. 9

VI. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. ___, 129 S. Ct. 1937 (2009) ................................................................................ 1, 5

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. 10-4387-PJH, 2011 U.S. Dist. LEXIS 57348 (N.D. Cal. May 26, 2011) ........................... 8, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 1, 5

*Berenblat v. Apple, Inc.*,
   No. 08-4969JF, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 7, 2010) ..................................... 7

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) ................................................................................. 1, 3, 5, 6, 10

*Falk v. Gen. Motors Co.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................................................. 2, 6

*Hameed v. IHOP Franchising, LLC*,
   2010 U.S. Dist. LEXIS 115123 (E.D. Cal. Oct. 28, 2010) ........................................................... 9

*In re Abbott Labs.*,
   No. 04-1511, 2007 U.S. Dist. LEXIS 44459 (N.D. Cal. June 11, 2007) ..................................... 9

*In re Sony HDTV Litig.*,
   No. 08-2276, 2010 WL 4892114 (S.D. Cal. Nov. 30, 2010) ........................................................ 7

*Klein v. Earth Elements, Inc.*,
   59 Cal. App. 4th 965 (1997) ......................................................................................................... 7

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) .................................................................................... 7, 9

*Outboard Marine Corp. v. Superior Court*,
   52 Cal. App. 3d 30 (1975) ............................................................................................................ 5

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746, 2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009) ........................................ 8

*Tietsworth v. Sears, Roebuck and Co.*,
   No. 09-288-JF, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) .................................................. 3, 6

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................................................... 10

**TABLE OF AUTHORITIES**
**[Continued]**

Page(s)

**Statutes**

Cal. Civ. Code § 1770(a)(5) ........................................................................................................... 10

Cal. Civ. Code § 1770(a)(7) ........................................................................................................... 10

# I. INTRODUCTION

There is no dispute that through this action, Plaintiffs Brandon and Erin Banks are trying to make Nissan North America ("NNA") pay for the cost of making an out-of-warranty repair to their vehicle, which is now more than 7 years old and has been driven about 90,000 miles. Plaintiffs do not dispute the general rule that a manufacturer has no duty to disclose defects that might arise at some point in time after the limited warranty period. (Opp'n Br. at 4–5 (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006)). Nor do the parties contest that a narrow exception to this general rule is that a duty to disclose may arise if a manufacturer is aware of a product defect that poses an unreasonable safety risk. (*Id.*) While Plaintiffs have tried to cloak themselves within this exception, they have not alleged facts in the First Amended Complaint ("FAC") sufficient to do so.

For the exception to apply, Plaintiffs must plead facts plausibly indicating: (1) that the Delta Stroke Sensor is faulty; (2) that a faulty sensor creates an unreasonable safety risk; and (3) that the risk was known to NNA but concealed from Plaintiffs, giving rise to a duty to disclose. *See Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." (quotation marks and citation omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (dismissing complaint where allegation of wrongdoing was implausible because only facts offered in support of the claim demonstrated lawful conduct); *Daugherty*, 144 Cal. App. 4th at 834 (describing narrow exception for alleged unreasonable safety risks).

The FAC falls short of alleging an unreasonable safety hazard. The FAC does not offer any specific facts to establish that a faulty Delta Stroke Sensor causes a complete and total braking failure, or even to what extent a faulty Delta Stroke Sensor may impair braking. The facts pleaded are consistent with a common scenario for older vehicles: a part had worn out at 90,000 miles and needed to be replaced. Indeed, far from alleging an unreasonable safety risk at the time of purchase, the facts as pleaded allege that the <u>first</u> indication of this alleged circumstance occurred more than <u>seven</u> years later. Moreover, while Plaintiffs' brief points to conclusory allegations that the failure of the Delta Stroke Sensor makes the brakes "disabled," and renders drivers "unable to stop their vehicle" (Opp'n Br. at 6 (quoting FAC at 2)), the factual allegations paint a different picture. The FAC states that "if the Delta

1

Stroke Sensor fails, the sensor is not able to tell the brake vacuum <u>booster</u> to . . . releas[e] the <u>increased</u> pressure on the master cylinder." (FAC ¶ 20, underlining added.)  In other words, Plaintiffs' factual allegations state that a driver may lose some unspecified amount of mechanical assistance when the sensor fails—but this is a far cry from alleging a total braking failure or any other safety hazard that might be deemed unreasonable.  Pleading that a person may not receive a mechanical braking "boost" does not state an allegation that a driver would be unable to stop the car.  Indeed, Plaintiffs' factual allegations concerning their own experience indicate that they were able to safely stop the car even after Ms. Banks supposedly drove through a "busy and controlled intersection."  Thereafter, they drove the car to the dealer, drove it home, and drove it back to the dealer again, all after the alleged "failure."  When the FAC is stripped of its unwarranted inferences and conclusory allegations, there are no facts to indicate any risk that the vehicles at issue will experience a total breaking failure or any other unreasonable safety risk due to a faulty Delta Stroke Sensor.  Plaintiffs thus fail to plead facts establishing a necessary element of the exception to the rule that a manufacturer has no duty to disclose issues that may arise post-warranty.[1]

Even if Plaintiffs could establish an unreasonable safety risk, Plaintiffs do not dispute that they must also allege facts plausibly showing that NNA (a) knew of the safety concerns with the Delta Stroke Sensor, and (b) actively concealed its knowledge from Plaintiffs. (Opp'n Br. at 7–9 (discussing *Falk v. Gen. Motors Co.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007).  Plaintiffs have failed to do so.  Much like the allegations regarding safety, the FAC contains only generalized statements about NNA's alleged knowledge and concealment that are unsupported by the pleaded facts. Plaintiffs' allegations focus on a Technical Service Bulletin ("TSB") issued by NNA in May of 2006 addressing the diagnostic code that appeared when Plaintiffs took their vehicle in for repair.  The fact that NNA issued a bulletin to assist repair facilities does not indicate previous knowledge of a defect creating a safety hazard.  And the existence of the TSB is inconsistent with any claim of concealment.  This May 2006 bulletin was publicly available months before Plaintiffs state that they purchased their vehicle— NNA transmitted the

---

[1] Plaintiffs also fail to plead facts plausibly indicating that NNA—the only entity that has appeared to date—owed any duty to disclose to Plaintiffs.  Tellingly, they do not, and cannot, allege that they bought their vehicle from NNA, as they actually bought the used vehicle from a third party.

1  TSB to the National Highway Traffic Safety Administration ("NHTSA"), as it is required to do by law.
2  *See* 49 C.F.R. § 579.5 ("Each manufacturer shall furnish to NHTSA . . . a copy of all notices, bulletins,
3  and other communications . . . sent to more than one manufacturer, distributor, [or] dealer . . . ."); *see*
4  *also* Request for Judicial Notice (concurrently filed).  The TSB was then publicly available through
5  NHTSA, a fact illustrated by the Plaintiffs' detailed description of the document.  In sum, Plaintiffs do
6  not point the Court to any alleged facts that would indicate intentional concealment by NNA, rendering
7  the FAC deficient even if Plaintiffs had identified an unreasonable safety concern.

8  Plaintiffs' experience makes plain that this case concerns two people who believe that the
9  manufacturer should pay for repairs to their used car even after limited warranty and their service
10  contract have expired.  That theory is defunct, and because Plaintiffs have failed to plead factual
11  allegations sufficient to fit into the narrow exception that is available for certain unreasonable safety
12  hazards, their claims for unjust enrichment and violation of the UCL and CLRA must be dismissed.

### II. PLAINTIFFS FAIL TO ESTABLISH ANY EXCEPTION TO THE GENERAL RULE THAT MANUFACTURERS ARE NOT LIABLE FOR OUT-OF-WARRANTY REPAIRS

15  As NNA discussed in its opening brief, a manufacturer ordinarily has no duty to pay for out-of-
16  warranty repairs, or to disclose defects that may manifest—if at all—after the warranty period expires.
17  *Daugherty*, 144 Cal. App. 4th 824, 834 (2006).  Plaintiffs do not contest this bedrock principle of
18  warranty law; indeed, their actions acknowledge they understood this fact as they bought an extended
19  service contract to limit their personal risk for this type of expense.  Yet, in this case, they try to avoid
20  the consequences of this general principle by contending that their case fits into a narrow exception for
21  products that create "an unreasonable safety risk."  (Opp'n Br. at 4.)

22  To bring their case under this limited exception, Plaintiffs must allege facts showing that an
23  alleged defect in a product is the cause of an unreasonable risk of physical injury to consumers.  *See, e.g.*
24  *Daugherty*, 144 Cal. App. 4th at 834; *Tietsworth v. Sears, Roebuck and Co.*, No. 09-288-JF, 2009 WL
25  3320486, at *5 (N.D. Cal. Oct. 13, 2009) (requiring nexus between alleged defect and claimed safety
26  hazard).  Plaintiffs, however, have not alleged *facts* linking problems with the Delta Stroke Sensor—a
27  sensor that regulates the feel of the brake pedal for the driver (among other things)—to an unreasonable
28  safety concern.

Plaintiffs try to manufacture an "unreasonable" "safety" risk by drastically augmenting the actual allegations pleaded.  The allegations regarding safety begin with one person—Ms. Banks—who allegedly coasted through an intersection "despite applying the brakes in a manner reasonably anticipated to bring the vehicle to a complete stop." (FAC at 2:16–18.)  Ms. Banks does not allege that she was injured, collided with a car, did not ultimately stop the car using the braking system, or that her vehicle was damaged in any way as a result of the incident.  (*Id.*)  Ms. Banks apparently was able to safely bring her car to a stop safely after she drove through the intersection, and Plaintiffs had no problem stopping the car safely when they state that they took it to a Nissan service center for diagnosis and repair.  (*See* FAC ¶¶ 14–19 (describing multiple visits to the Nissan service center over a seven-day period without mentioning any problems in stopping the car).)  In fact, even after Ms. Banks' incident, Plaintiffs continued to drive the car for a full week before they decided to have the Delta Stroke Sensor replaced.  (*Id.*)  Notably, they replaced the part with another Delta Stroke Sensor, notwithstanding their broad and unsubstantiated assertions about the alleged defects in such sensors.

That Plaintiffs were able to safely stop the car even with a supposedly faulty Delta Stroke Sensor does not come as a surprise after a close reading of the FAC.  The FAC describes that the sensor provides a mechanical boost to the manual braking power provided by the driver, such that a faulty sensor may impact the level of assistance provided, but not cause a total braking failure:

> If the Delta Stroke Sensor fails, the sensor is not able to tell the brake vacuum booster to open/close the accumulator on the master cylinder.  The accumulator, which regulates brake pressure, does not get an accurate readout, thereby preventing the accumulator (a pressure reservoir) from releasing the increased pressure on the master cylinder.  The failure causes the brakes not to perform in the manner experienced by Plaintiff Erin Banks.

(FAC ¶ 20.)

Plaintiffs are noticeably careful concerning the extent of the supposed failure of Ms. Banks' brakes.  The pleaded facts do not claim that Ms. Banks could not stop the vehicle at all, but rather that she could not stop it by applying the brakes "in a manner reasonably anticipated to bring the vehicle to a complete stop…." (FAC at p. 2).  Plaintiffs do not explain what Ms. Banks "reasonably anticipated" with respect to braking pressure or performance.  Plaintiffs also leap to the unwarranted conclusion that a faulty Delta Stroke Sensor causes "the braking ability of the AFFECTED VEHICLES [to be]

4

*disabled*" (FAC at 2:10–11), and renders drivers "unable to stop their vehicle within a reasonably safe time and distance, ***or at all***" (*id*. (emphases added)).   The FAC notably does not describe either of these situations.  The brakes on Plaintiffs' car were not disabled, and the brakes were still able to stop the car, as evidenced by the allegation that Ms. Banks was not in a collision and that Plaintiffs safely drove the car for many years before the alleged incident and for a week after Plaintiffs state that the vehicle was diagnosed with a Delta Stroke Sensor problem.  (*See* FAC ¶¶ 14–19.)  When the complaint is stripped of conclusions and unwarranted inferences, Plaintiffs have not alleged any facts to indicate that the brakes would not stop the car, or even the extent to which a faulty sensor supposedly affects the braking ability. *Twombly*, 550 U.S. at 570 (2007) (requiring complaint to "contain sufficient factual matter" that states a facially plausible claim to relief); *Iqbal*, 129 S. Ct. at 1949 (2009) (demanding more than "naked assertions devoid of further factual enhancement" in order to avoid dismissal).  Rather, Plaintiffs' actions and the facts alleged are consistent with a consumer who is upset by having to pay the cost of replacing a worn-out part.

   Plaintiffs' failure to allege a nexus between a Delta Stroke Sensor failure and an unreasonable safety risk distinguishes this case from others where safety concerns were present.  Plaintiffs cite *Daugherty* as a case recognizing that safety concerns could give rise to a duty to disclose, but do not mention that *Daugherty*'s conclusion followed its review of a case where an off-road vehicle "'was unstable,'" "'would roll over on a downgrade,'" and had a braking system that was "'totally defective.'" 144 Cal. App. 4th 834 (quoting and discussing *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 37 (1975)).  *Daugherty* made clear that the allegations gave rise to a duty to disclose because the manufacturer made contrary representations about the off-road vehicle's capabilities and thus concealed the fact that the off-road vehicle was completely unsafe for its intended purpose.  Here, Plaintiffs do not allege any representations that NNA made about the Delta Stroke Sensor.  Moreover, Plaintiffs' repeated ability to stop the car safely does not lead to the conclusion that the braking system is "totally defective," which makes this case meaningfully different from *Daugherty* and *Outboard Marine*.  Plaintiffs place similar reliance on *Falk v. General Motors Corp.*, but like these other cases, there the factual allegations demonstrated that the products were "truly defective" in a way that created a safety hazard.   496 F. Supp. 2d at 1096.

Ultimately, all that the FAC alleges is that on one occasion, Ms. Banks had issues bringing her used, 7-year-old vehicle with approximately 90,000 miles of wear and tear, to a stop as quickly as she expected. Nonetheless, she apparently stopped safely and had no other problems with the vehicle. The FAC thus fails to allege facts showing that a class of users is placed at a risk of injury as a result of the alleged defect, and fails to allege that NNA had a duty to disclose alleged post-warranty problems with the Delta Stroke Sensor. Accordingly, their UCL and CLRA claims should be dismissed. *Tietsworth*, 2009 WL 3320486, at *5 (finding no duty to disclose where there was no nexus between the safety risk and the alleged defect and where no plaintiffs experienced a threat to their safety); *Falk*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (finding duty to disclose because allegations demonstrated that the products were "truly defective" and that the alleged defect was the cause of the safety risk); *Daugherty*, 144 Cal. App. 4th at 836 (dismissing omission-based UCL and CLRA claims that failed to allege that the defect at issue posed an "unreasonable risk" of harm to consumers).

### III. PLAINTIFFS FAIL TO STATE FACTS SHOWING THAT NNA CONCEALED ANY KNOWLEDGE OF THE ALLEGED SAFETY HAZARDS

Even if Plaintiffs had successfully alleged facts giving rise to a duty to disclose—and they have not—Plaintiffs' claims still fail because they do not allege any facts demonstrating that NNA intentionally concealed any information about problems with the Delta Stroke Sensor.

Plaintiffs concede that to state a claim, they must plead facts showing that NNA must have had, and concealed, "exclusive knowledge" of the defect and the attendant safety problems. (*See* Opp'n Br. at 4, 6 (citing *Falk*, 496 F. Supp. 2d at 1196 ("[A] duty to disclose exists 'when the defendant had exclusive knowledge of material facts not known to the plaintiff.'")).) In an attempt to establish this "exclusive knowledge" Plaintiffs refer the Court to paragraph 23 in the FAC. That paragraph states that users "complained" to a Nissan dealership (not NNA), without specifying the substance of these complaints, where they were made, or to whom. In its motion to dismiss, NNA demonstrated why these vague and generalized allegations of "complaints" are insufficient to establish "exclusive knowledge" of a safety problem in the Delta Stroke Sensor, but Plaintiff does not address NNA's argument or the authorities it cited. (Mot. at 11 (citing *Berenblat v. Apple, Inc.*, No. 08-4969JF, 2010 U.S. Dist. LEXIS 46052, at *27 (N.D. Cal. Apr. 7, 2010) (allegations that manufacturer received complaints "[b]y

6

themselves . . . are insufficient to show that [NNA] had knowledge" of the alleged defect"); and *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008) ("Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants.").)

       Plaintiffs' attempt to impute knowledge to NNA through a TSB that NNA released in 2006 is no more availing. While NNA contests the allegation that the Delta Stroke Sensor in the vehicle at issue is defective (as opposed to worn out), even accepting that proposition as true for purposes of this motion does not establish that NNA *knew* that all of the sensors in the class of vehicles at issue were defective. And it certainly does not show that NNA *knew* a defective Delta Stroke Sensor would cause an unreasonable safety hazard in the vehicles. Were Plaintiffs' position to become the law, every automobile manufacturer who issues a TSB could be held liable for "concealing" a "defect." Yet the act of publishing the TSB contradicts any notion of concealment, and Plaintiffs cannot cite any legal authority to support their proposition, which is contrary to the existing law. *See Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1997) (holding that the unintentional sale of a defective product is "neither illegal, unfair nor fraudulent within the meaning of section 17200."); *In re Sony HDTV Litig.*, No. 08-2276, 2010 WL 4892114, at *11 n.6 (S.D. Cal. Nov. 30, 2010) (a manufacturer "cannot be liable for failing to disclose a fact of which it was not aware").

       Even if the TSB was somehow deemed to establish that NNA had "exclusive knowledge" of a supposed problem with the Delta Stroke Sensor, the very existence of the bulletin is inconsistent with the claim that NNA failed to disclose information to Plaintiffs. According to the FAC, NNA issued the TSB more than *5 years ago*, on May 12, 2006. (FAC ¶ 23.) Notably, the TSB was published at least *4 months before* Plaintiffs purchased their vehicle in October 2006. (FAC ¶ 12.) At the time that Plaintiffs bought their vehicle, NNA had thus disclosed to its service centers—and to NHTSA—all of the information contained in the 22-page TSB, and that information has been available to Plaintiffs for several years now. Plaintiffs could have obtained a copy of the bulletin had they requested one from NHTSA before they purchased their car, or at any point before Ms. Banks allegedly coasted through an

1 intersection.[2]  Indeed, the FAC's detailed description of the TSB demonstrates that Plaintiffs now have a
2 copy of the document in their possession:  the FAC describes the content of the bulletin, refers to the
3 identifying number given by NNA (NTB06-040), and notes that the bulletin is 22 pages in length.  (FAC
4 ¶ 23; *see also* Request For Judicial Notice)

5       Plaintiffs' reference to the TSB thus does not plausibly indicate concealment, and Plaintiffs
6 have alleged no other facts to support their claim.  Without any factual allegations to plausibly support
7 the conclusory claims that NNA "actively concealed" any "exclusive knowledge" of issues with the
8 Delta Stroke Sensor, the UCL and CLRA claims are deficient.  *Stearns v. Select Comfort Retail Corp.*,
9 No. 08-2746, 2009 U.S. Dist. LEXIS 48367, at *31 (N.D. Cal. June 5, 2009) (dismissing plaintiff's
10 concealment claims where documents attached to complaint indicated that defendant disclosed the
11 alleged issue in public filings).

12       **IV.  <u>UNJUST ENRICHMENT IS NOT A CAUSE OF ACTION</u>**

13       Plaintiffs ignore the many cases NNA cited in its brief demonstrating that California does not
14 recognize a cause of action for "unjust enrichment."  (*See* Mot. at 12.)  Instead, Plaintiffs assert that they
15 may state an unjust enrichment claim based on this Court's decision in *Astiana v. Ben & Jerry's*
16 *Homemade, Inc.*, No. 10-4387-PJH, 2011 U.S. Dist. LEXIS 57348, at *28 (N.D. Cal. May 26, 2011).  In
17 *Astiana*, this Court followed well-established California law to conclude that "unjust enrichment is not a
18 stand-alone claim under California law; it is a fall-back theory that would come into play only in the
19 event of a finding of liability on some other non-contractual claim," such as quasi-contract.  *Id.*  Far
20 from holding that unjust enrichment is a cause of action, in *Astiana* the Court found that plaintiff alleged
21 a valid cause of action for quasi-contract, which if proven would give rise to the ***remedy*** of unjust
22 enrichment.  *Id.*

23       Plaintiffs try to save their unjust enrichment claim by arguing that they have pleaded a claim for
24 quasi-contract.  But the FAC unequivocally titled the third cause of action as "Unjust Enrichment."

---

[2] Copies of the numerous TSBs released by automobile manufacturers with respect to their specific vehicles (in compliance with 49 C.F.R. § 579.5) can be obtained through NHTSA's website, www-odi.nhtsa.dot.gov/tsbs/.  *See* Request for Judicial Notice.  A copy of the specific bulletin referenced in the FAC may be requested through the website by either through following a series of drop down menus selecting the model, make and year, or through inserting NHTSA Item No. 10020026.

1  (FAC ¶ 15.)  Plaintiff cannot ignore the face of its own deficiently pleaded claims in an effort to ward

2  off dismissal, and as *Astiana* and the several cases cited by NNA in its motion to dismiss make clear,

3  there is no separate cause of action for "Unjust Enrichment."  *See*, *e.g.*, *Hameed v. IHOP Franchising,*

4  *LLC,* 2010 U.S. Dist. LEXIS 115123, at *8 (E.D. Cal. Oct. 28, 2010) ("the law is settled that unjust

5  enrichment is not a cognizable claim under California law"); *see also* Mot. at 12.

6        In a final grasp to salvage the FAC, Plaintiffs claim that the Unjust Enrichment claim should

7  stand because "a California federal court should allow class members from other states to pursue unjust

8  enrichment claims."  (Opp'n at 12.)  To begin, Plaintiffs have yet to seek to certify a nationwide class.

9  And Plaintiffs do not claim that they can bring an unjust enrichment cause of action under some other

10 state's laws.  The lone case that Plaintiffs cite to support their position—a reversed district court

11 opinion—unsurprisingly considered the propriety of certifying claims of unjust enrichment for

12 nationwide class treatment, a much different question than whether California recognizes an independent

13 unjust enrichment claim in the first place.  *See In re Abbott Labs.*, No. 04-1511, 2007 U.S. Dist. LEXIS

14 44459, at *24 (N.D. Cal. June 11, 2007).

15       Moreover, Plaintiffs have failed to identify any unjust conduct.  There is nothing unfair about

16 requiring a consumer to pay for repairs after the warranty period expires:  "Indeed, the purpose of a

17 warranty is to contractually mark the point in time during the useful life of a product when the risk of

18 paying for repairs shifts from the manufacturer to the consumer."  *Oestreicher*, 544 F. Supp. 2d at 972.

19       **V.  PLAINTIFFS' CLAIMS FAIL THE HEIGHTENED PLEADING STANDARD**

20       Plaintiffs do not dispute that their claims must be pleaded with particularity, yet they can only

21 point the Court to insufficient conclusions and broad generalizations.  (Opp'n Br. at 9.)

22       For example, NNA's motion to dismiss argued that Plaintiffs' CLRA claims failed to meet Rule

23 9(b) because Plaintiffs failed to show how NNA represented that the vehicles were of a quality or grade

24 that they were not.  Plaintiffs do not even allege from whom they bought the used vehicle, and NNA is

25 not alleged to have made any representations to them about this vehicle.  Moreover, the summary "who,

26 what, where, when and how" outline that Plaintiffs give (Opp'n Br. at 9) do not deliver any specific facts

27 at all—the "who" is merely a recitation of the parties to this lawsuit; the "what" generally mentions the

28 alleged omission of issues with the Delta Stroke Sensor; the "where" mentions only where the vehicles

are sold; the "when" section does not even specify a time period, much less a particular date; and the "how" is similarly generic.  Plaintiffs must point the Court to particular facts if they are to discharge their burden under Rule 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

## VI.  CONCLUSION

Although Plaintiffs have attempted to create a theory that would avoid dismissal under *Daugherty*, they have failed to couple that theory with any well-pleaded facts plausibly indicating a right to relief.  Plaintiffs attempt to manufacture a safety concern, but their own allegations show that they safely brought the car to a stop even after they state that their car was diagnosed with a faulty Delta Stroke Sensor.  Plaintiffs argue that NNA "concealed" "exclusive knowledge" of problems with the Delta Stroke Sensor, but cite to a publicly available Technical Service Bulletin showing that NNA disclosed any issues more than 5 years ago, and before Plaintiffs' bought their used car.  The FAC should be dismissed with prejudice.

DATED:  September 21, 2011

GIBSON, DUNN & CRUTCHER LLP
G. Charles Nierlich
Timothy W. Loose
Rachel A. Flipse


By:       */s/ G. Charles Nierlich*
              G. Charles Nierlich

Attorneys for Defendant,
Nissan North America, Inc.

101151881.6