Michael F. Ram (SBN 104805)
Karl Olson (SBN 104760)
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Tel:  415-433-4949
Fax:  415-433-7311
Email:  mram@rocklawcal.com; kolson@rocklawcal.com

Clifford L. Carter (SBN 149621)
Kirk J. Wolden (SBN 138902)
CARTER WOLDEN CURTIS, LLP
1111 Exposition Boulevard, Suite 602
Sacramento, CA  95815
Tel:  916-567-1111
Email:  cliff@cwclawfirm.com; kirk@cwclawfirm.com

F. Jerome Tapley (*Pro Hac Vice*)
Hirlye R. "Ryan" Lutz, III (*Pro Hac Vice*)
CORY WATSON, P.C.
2131 Magnolia Avenue
Birmingham, AL  35205
Tel:  205-328-2200
Email:  jtapley@corywatson.com, rlutz@corywatson.com

WYLY~ROMMEL, PLLC
James C. Wyly (*Pro Hac Vice*)
Sean F. Rommel (*Pro Hac Vice*)
4004 Texas Boulevard
Texarkana, TX 75503
Telephone: 903-334-8646
Facsimile: 903-334-8645
Email: jwyly@wylyrommel.com; srommel@wylyrommel.com

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| BRANDON BANKS, ERIN BANKS and DAVID SOLOWAY, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | Case No. 4:11-cv-02022-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>**Date:      May 20, 2015**<br>**Time:      9:00 a.m.**<br>**Judge:    Hon. Phyllis J. Hamilton**<br>**Place:    Courtroom 3, 3rd Floor**<br>**              Oakland, CA**<br><br>**Action Filed:  April 25, 2011** |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 2

I.    INTRODUCTION ........................................................................................................ 2

II.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3)) ................................ 3

III.  STATEMENT OF FACTS ........................................................................................... 3

      A.    The Litigation ................................................................................................. 3

      B.    The Settlement ................................................................................................ 3

            1.    The Settlement Class ........................................................................... 4

            2.    Settlement Benefits ............................................................................. 4

            3.    Attorneys' Fees and Expenses ............................................................ 5

            4.    Class Representative Service Awards .................................................. 5

            5.    Release of Claims Excluding Personal Injury Claims ........................ 6

            6.    Notice Has Been Accomplished In Accordance With The Court's
                  Preliminary Approval Order ................................................................ 6

IV.   THE CLASS ACTION SETTLEMENT APPROVAL PROCESS ............................. 6

V.    THE SETTLEMENT MERITS FINAL APPROVAL ................................................ 7

      A.    The Proposed Settlement is Presumed to Be Fair ......................................... 8

      B.    All of the Relevant Criteria Support Final Approval .................................... 9

            1.    The Strength of Plaintiffs' Case ......................................................... 9

            2.    The Risk, Complexity and Duration of Further Litigation ................ 10

            3.    The Risk of Maintaining Class Action Status Throughout Trial and
                  On Appeal ........................................................................................... 11

            4.    The Amount Offered in Settlement .................................................... 11

            5.    Extent of Discovery and the State of the Proceedings ...................... 12

            6.    The Experience and Views of Counsel, and a Neutral Mediator ..... 13

            7.    The Presence of a Government Participant ........................................ 13

            8.    Class Members' Reaction Favors Final Approval ............................ 14

                  a.    Class Member Reaction Overwhelmingly Favors
                        Settlement Approval ................................................................ 14

|   |   | b. | The Few Objections Received Should Not Preclude Approval | 15 |

9.     Absence of Collusion ............................................................. 17

VI.     THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED; FEDERAL AND STATE OFFICIALS HAVE BEEN NOTIFIED AS REQUIRED BY CAFA. ............................ 18

A.     Notice to the Settlement Class............................................................. 18

B.     Notice To Federal And State Officials ................................................. 20

VII.     THE COURT SHOULD AWARD SERVICE PAYMENTS TO THE CLASS REPRESENTATIVES ........................................................................................ 20

VIII.     CONCLUSION ........................................................................................... 22

ii

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Boyd v. Bechtel Corp.*
  485 F. Supp. 610 (N.D. Cal. 1979)....................................................................15

4

*Chamberlan v. Ford Motor Co.*
  402 F.3d 952 (9th Cir. 2005)...........................................................................13

5

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992)............................................................................6

6

7

*Create-A-Card, Inc. v. Intuit, Inc.*
  2009 U.S. Dist. LEXIS 93989 (N.D. Cal. 2009)................................................9

8

9

*Dunleavy v. Nadler*
  213 F.3d 454 (9th Cir. 2000)...........................................................................12

10

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) ........................................................................................18

11

12

*Ellis* v. *Naval Air Rework Facility*
  87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................13

13

*Garner v. State Farm Auto Ins. Co.*
  2010 WL 1687832 (N.D. Cal. 2010)...........................................................8, 14

14

15

*Harris v. Vector Marketing*
  2013 WL 381202 (N.D. Cal. 2013)..................................................................21

16

*Hopson v. Hanesbrands Inc.*
  2009 WL 928133 (N.D. Cal. 2009)..................................................................21

17

18

*In re Critical Path, Inc.*
  2002 WL 32627559 (N.D. Cal. 2002)..............................................................12

19

*In re Prudential SEC. Inc., Ltd. P'ships Litig.*
  163 F.R.D. 200 (S.D.N.Y. 1995)......................................................................11

20

21

*In re Wireless Facilities, Inc. Securities Litigation II*
  253 F.R.D. 607 (S.D. Cal. 2008)........................................................................8

22

*Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*
  2009 WL 3562871 (N.D. Cal. 2009)................................................................21

23

24

*Jaffe v. Morgan Stanley & Co.*
  2008 WL 346417 (N.D. Cal. 2007)..................................................................12

25

*Keilholtz v. Lennox Hearth Prods.*
  268 F.R.D. 330 (N.D. Cal. 2010) ....................................................................13

26

27

*Marshall v. Holiday Magic, Inc.*
  550 F.2d 1173 (9th Cir. 1977)....................................................................10, 14

28

iii

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012) ...............................................................................11

*Molski v. Gleich*
318 F.3d 937 (9th Cir. 2003) ..................................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*
339 U.S. 306 (1950) .............................................................................................18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................8, 14

*Officers for Justice v. Civil Service Com.*
688 F.2d 615 (9th Cir. 1982) .............................................................................8, 10

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 (1985) .............................................................................................18

*Resnick v. Frank*
779 F.3d 934 (9th Cir. 2015) ................................................................................21

*Rodriguez v. West Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009) .................................................................8, 9, 12, 13

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003) .............................................................................7, 9

*Stoetzner v. U.S. Steel Corp.*
897 F.2d 115 (3d Cir. 1990) ..............................................................................9, 14

*Tittle v. Enron Corp. (In re Enron Corp. Sec.)*
228 F.R.D. 541 (S.D. Tex. 2005) ..........................................................................11

*Young v. Katz*
447 F.2d 431 (5th Cir. 1971) ................................................................................10

*Zeisel v. Diamond Foods, Inc.*
2012 U.S. Dist. LEXIS 148893 (N.D. Cal. 2012) ...............................................13

**Rules**

Fed. R. Civ. P. 23 .........................................................................................1, 7, 18

**Statutes**

28 U.S.C. § 1715 ..................................................................................................14

**Other Authorities**

MCL 4th § 21.61 ....................................................................................................7

MCL 4th § 21.634 ..................................................................................................7

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on May 20, 2015, at 9:00 a.m., in the Oakland Courthouse,

3    Courtroom 3, 3rd Floor, 1301 Clay Street, Oakland, California, before the Honorable Phyllis J.

4    Hamilton, the Plaintiff Class will move this Court for an order granting final approval of the

5    proposed class action settlement and: (1) approving the proposed settlement as fair, adequate, and

6    reasonable for the Settlement Class; (2) determining that the Settlement Class received adequate

7    notice; (3) awarding service payments to Erin Banks, Brandon Banks, David Soloway, and Tom

8    West, as provided in the Settlement Agreement and Release (Dkt. # 160-1, ¶ 33); and, (4)

9    awarding attorneys' fees and expenses as provided in the Settlement Agreement and application

10   for attorneys' fees and expenses, (*see* Dkt. # 177).

11       Plaintiffs file this motion pursuant to Rule 23 of the Federal Rules of Civil Procedure.

12   This motion will be based on this Notice of Motion and Memorandum of Points and Authorities;

13   the Settlement Agreement and Release (Dkt. # 160-1); the attached Declaration of the Honorable

14   Edward Infante (Ret.); the attached Declarations of Class Representatives Erin Banks, Brandon

15   Banks, David Soloway, and Tom West; the attached Declaration (including exhibits) of notice

16   and settlement administrator Lacey Racines ("Racines Dec."); the Motion for Preliminary

17   Approval (Dkt. # 159) and all of the submissions and attachments previously filed in support of

18   it, including but not limited to the Declaration of Patrick M. Passarella (Dkt. # 163) and the

19   [Proposed] Order Granting Final Approval to Class Action Settlement and Final Judgment (Dkt.

20   # 160-3); the Court's December 24, 2014 Order (1) Preliminarily Approving Class Action

21   Settlement, (2) Provisionally Certifying a Nationwide Settlement Class, (3) Approving Proposed

22   Class Notice, and (4) Scheduling a Final Fairness Hearing (Dkt. # 173); the Motion of Plaintiff

23   Class for Attorneys' Fees and Expenses (Dkt. # 177) and all of the submissions and attachments

24   previously filed in support of it; the pleadings, papers and other records on file in this action; and

25   such other matters as may be presented before or at the hearing of this motion.

26   / / /

27   / / /

28   / / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The Settlement Class respectfully submits that the settlement is fair, adequate, reasonable, and in the best interests of the class as a whole.  The terms of the Settlement Agreement and Release (hereinafter "Proposed Settlement") provide substantial benefits to the Settlement Class.  Final Approval of the proposed class action settlement should be granted.

With assistance from the Hon. Edward Infante (Ret.), Class Counsel negotiated what is indisputably an arms-length proposed settlement with Defendant Nissan North America ("NNA") that provides notice to all former and current owners of Affected Vehicles of the alleged defect and their ability to make a claim for reimbursement of out-of-pocket expenses incurred to repair and/or replace their Delta Stroke Sensor ("DSS").  (*See* Declaration of Kirk J. Wolden In Support of Preliminary Approval, "Wolden Dec.," Dkt. # 160, ¶¶ 10-14).  Each Settlement Class member is entitled to submit a claim for reimbursement of out-of-pocket expenses incurred to repair or replace the DSS by following a reasonable and easily understood claims procedure.  The Settlement Agreement and Release assures that NNA—not the Settlement Class—bears the cost of notice and administration, Class Counsel's fees and expenses, and the class representative service payments.

Settlement Class member response to the Proposed Settlement supports final approval. The combined total of Settlement Class Members who lodged objections or opted out of the Proposed Settlement is 101 (eight objections and 93 opt-outs)—less than 0.012% of the identified 887,054 current and former owners.  (*See* Racines Dec., ¶¶ 6, 20, 21).  Per the court-approved Notice Plan, direct notices were successfully mailed to 857,444 addresses, a rate of over 96.6%.  (*Id.* at ¶¶ 6, 17).  As set out in the Notice Plan and in the declaration of the settlement administrator, notice to the balance of the Settlement Class was achieved through direct notice mailed to current and former owners (*id.* at ¶¶ 6-8, 12-17), and supplemented by a dedicated website and a toll-free telephone number,  (*id*. at ¶¶ 10-11).

The Settlement Class requests that the Court grant final approval of the Proposed Settlement by: (1) finally approving the Proposed Settlement Agreement as fair, adequate, and

1    reasonable for the certified national Settlement Class; (2) determining that the Settlement Class

2    received adequate notice; (3) awarding Class Representative service payments; and (4) awarding

3    Class Counsel's fees and expenses in the amounts requested, (*see* Motion of Plaintiff Class for

4    Attorneys' Fees and Expenses, Dkt. # 177).

5    **II.    STATEMENT OF ISSUES TO BE DECIDED** (L.R. 7-4(A)(3))

6         The issues presented are whether the Court should:

7         1.    approve the Proposed Settlement as fair, adequate, and reasonable for the

8               Settlement Class;

9         2.    find that the Settlement Class received adequate notice;

10        3.    award service payments to Class Representatives Erin Banks, Brandon Banks,

11              David Soloway, and Tom West as requested; and

12        4.    award attorneys' fees and expenses to Class Counsel as requested in the Motion

13              of the Plaintiff Class for Attorneys' Fees and Expenses (Dkt. # 177).

14   **III.   STATEMENT OF FACTS**

15        **A.    The Litigation**

16        In accordance with this Court's standing Order "Procedural Guidelines for Class Action

17   Settlements," the Plaintiff Class incorporates its detailed presentation of the history of the

18   litigation contained in its Motion for Attorneys' Fees and Expenses, Dkt. # 177, at pages 2

19   through 10.  *See also* Declarations of Class Counsel (Tapley Dec., Dkt. # 177-1; Wolden Dec.,

20   Dkt. # 177-2; Wyly Dec., Dkt. # 177-3; Ram Dec., Dkt. # 177-4).

21        **B.    The Settlement**

22        The nationwide Settlement provides for a claims-made reimbursement process for the

23   887,054 present and former owners of 263,967 Affected Vehicles.   The value of a Class

24   Member's claim for reimbursement for out-of-pocket costs associated with DSS repair or

25   replacement will vary depending on the mileage of the Affected Vehicle at the time of repair—

26   between $800.00 (vehicle mileage less than 48,000) to $20.00 (for very high mileage Vehicles

27

28

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

over 120,000 miles).[1]   The mileage-based schedule for Class Member reimbursement is rationally and reasonably amortized to take into account Vehicle use prior to paying for DSS repair or replacement.  (Wolden Dec., Dkt. # 160, ¶¶ 12-13).

### 1.    The Settlement Class

The Settlement Class consists of:

> All persons in the United States who currently own a model year 2004–2008 Nissan Titan (equipped with VDC), Nissan Armada, or Infiniti QX56 vehicle, or do not presently own one of these vehicles but previously did, and incurred the expense of repairing or replacing the Delta Stroke Sensor ("DSS") in the vehicle during the period of their ownership.  "Settlement Class Member(s)" means any member of the Settlement Class who does not elect exclusion or opt out from the Settlement Class pursuant to the terms and conditions for exclusion set out in the Settlement Agreement and Release and the Long Form Notice.  Excluded from the Settlement Class are all persons who are employees, directors, officers and agents of NNA or its subsidiaries and affiliated companies, as well as the judges, clerks, and staff members of the United States District Court for the Northern District of California, the Ninth Circuit Court of Appeal, the United States Supreme Court, and their immediate family members.  Also excluded from the Settlement Class are all claims for personal injury relating in any way to 2004–2008 Nissan Titan (equipped with VDC), Nissan Armada, and Infiniti QX56 vehicles.

(Dkt. # 160-1, Settlement Agreement and Release, ¶ 20).

### 2.    Settlement Benefits

The Settlement Class has received notice of the alleged DSS defect in their Affected Vehicles and has the opportunity to make a claim for reimbursement for their expenses paid to repair or replace the DSS in their Vehicles.  Specifically, Class Members with a diagnostic error code C1179 (DSS failure) at the time of DSS repair or replacement will be entitled to receive partial reimbursement of their expenses depending on the mileage of their vehicle at the time of repair in accordance with the following "Compensation Schedule" set forth in Paragraph 27 of the Settlement Agreement and Release (Dkt. # 160-1):

| Mileage at time of repair of DSS issue | % reimbursement of out-of-pocket costs to repair DSS issue | Maximum reimbursement per vehicle |
|---|---|---|
| Under 48,000 | 80.0% | $800 |
| 48,000-60,000 | 57.5% | $575 |
| 60,000-80,000 | 20.0% | $200 |

---

[1] See below at Section III (B)(2).

| | | |
|---|---|---|
| 80,000-100,000 | 17.5% | $175 |
| 100,000-120,000 | 6.0% | $60 |
| Over 120,000 | Up to $20 | $20 |

*Note: Mileage for the chart above is determined at the time of the repair for which the class member seeks reimbursement of out-of-pocket costs.*

The Parties agreed to this Schedule after extensive negotiations, which (1) reflect that NNA is offering out-of-warranty compensation; and (2) is rationally amortized to reflect the amount of vehicle life (by mileage) of Affected Vehicles prior to DSS repair confirmed by diagnostic error code C1179.  Plaintiffs and their counsel believe that the consideration provided for in the Settlement Agreement and Release directly addresses the DSS defect in Affected Vehicles, providing a fair and reasonable mechanism for compensation to past and current owners who incurred expense to repair or replace a DSS manifesting the defect.  (Brandon Banks Dec., ¶ 22; Erin Banks Dec., ¶ 12; Soloway Dec., ¶ 3; West Dec., ¶ 18); (Wolden Dec., Dkt. # 160, ¶¶ 10-14; Tapley Dec., Dkt. # 161, ¶ 10; Ram Dec., Dkt. # 162, ¶ 5; Wyly Dec., Dkt. # 164, ¶ 7).

### 3.    Attorneys' Fees and Expenses

Defendant NNA has agreed that Class Counsel is entitled to seek an award of reasonable attorneys' fees and expenses for prosecuting this action and will not object to Class Counsel's petition for fees and expenses not to exceed $3,450,000.00 inclusive of expenses.  The Motion of the Plaintiff Class for Attorneys' Fees and Expenses, and supporting Declarations set forth the basis for this request.  (Dkt. # 177).

### 4.    Class Representative Service Awards

The Settlement Agreement and Release allows Class Counsel to request and for Defendant NNA or its supplier, Continental Automotive Systems ("CAS"), to pay service awards to Class representatives Erin Banks, Bandon Banks, David Soloway, and Tom West not to exceed $5,000.00 each.  (Wolden Dec., Ex. "1", ¶¶ 33, 36).  Class representatives' agreement to the Settlement is not conditioned in any manner on the award of a service payment, or its amount.

1   (Wolden Dec., Dkt. # 160, ¶ 16).  Each of the Class representatives has given their time and

2   accepted their responsibilities admirably, participating actively in this litigation as required and in

3   a manner beneficial to the Class generally.  (Wolden Dec., ¶¶ 17-18; Wyly Dec., Dkt. # 164, ¶ 6);

4   (Brandon Banks Dec., ¶¶ 4-22; Erin Banks Dec., ¶¶ 4-12; Soloway Dec., ¶¶ 3-21; West Dec., ¶¶

5   5-18).

6   **5.       Release of Claims Excluding Personal Injury Claims**

7   Under the Settlement Agreement and Release, each member of the class will be deemed

8   to have released any and all claims, demands, rights, liabilities and causes of action of every

9   nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or that

10   might have been asserted, by the Plaintiffs or any Settlement Class Member, against NNA arising

11   out of or related to the facts giving rise to the subject matter of the Complaint in this case, except

12   personal injury claims.  (Dkt. # 160-1, ¶ 40).

13   **6.       Notice Has Been Accomplished In Accordance With The Court's
           Preliminary Approval Order**

14

15   The nationally recognized class action administration firm, Kurtzman Carson Consultants,

16   LLC ("KCC"), designed and implemented the notice plan approved by the Court.  (Racines Dec.,

17   ¶¶ 2-3).  The Notice Plan involves direct notice by mail to former and current owners of Affected

18   Vehicles.  KCC obtained Class Member address information through NNA and public records

19   utilizing VIN numbers provided by Defendant NNA. (*Id.* at ¶ 4).  KCC also provided notification

20   to the appropriate governmental officials pursuant to the Class Action Fairness Act of 2005, Pub.

21   L. No. 109-2, 119 Stat. 4 (2005), effective February 18, 2005.  (Passarella Dec., Dkt. # 163, ¶

22   16).

23   **IV.     THE CLASS ACTION SETTLEMENT APPROVAL PROCESS**

24   Courts strongly favor and encourage settlements, particularly in class actions, where the

25   costs, delays, risks, and uncertainties inherent in complex litigation might overwhelm any

26   recovery the class stands to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

27   (9th Cir. 1992) ("strong judicial policy . . . favors settlements, particularly where complex class

28   action litigation is concerned").  Approval of a class action settlement requires adherence to a

1  three-step process.  Here, two of the required steps have already been accomplished.

2       The Court has already granted preliminary approval of the Proposed Settlement and

3  certified the Settlement Class.  The Court preliminarily approved the Settlement Agreement and

4  Release as "fair, reasonable, and adequate," approved a class-wide notice campaign, and

5  scheduled a formal fairness hearing.  (*See* Dkt. # 173, Order Granting Preliminary Approval).

6       The second step in the process involves notice to the Settlement Class.  In accordance

7  with the Court's Preliminary Approval Order, KCC implemented the Court-approved Notice Plan

8  by employing the best practicable means to disseminate to all Settlement Class Members direct

9  notice of the essential terms of Settlement, including the date and time of the final settlement

10 approval hearing.  (*See* Racines Dec., attached).

11      The third and last step in the class action settlement approval process is the final

12 settlement approval hearing and final approval of the Proposed Settlement.  At the hearing, the

13 Settlement Class Members will have an opportunity to present their comments regarding the

14 Proposed Settlement, and Class Counsel will present argument based on the submitted evidence,

15 which supports the fairness, adequacy, and reasonableness of the Settlement.  *See* Manual for

16 Complex Litigation – 4th ("MCL 4th") § 21.634 at 415 (Fed. Judicial Center 2004).  Following

17 the hearing, the Court will decide whether to grant final approval of the Proposed Settlement, and

18 whether to enter the final Judgment and Order of Dismissal.

19 **V.      THE SETTLEMENT MERITS FINAL APPROVAL**

20      When faced with a motion for final approval of a class action settlement under Rule 23, a

21 court's inquiry is whether the settlement is "fair, adequate, and reasonable."  *Staton v. Boeing*

22 *Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  A settlement is fair, adequate, and reasonable, and merits

23 final approval, when "the interests of the class as a whole are better served by the settlement than

24 by further litigation."  MCL 4th § 21.61 at 406.

25      Although the Court possesses "broad discretion" in issuing a final determination that a

26 proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private

27 consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

28 necessary to reach a reasoned judgment that the agreement is not the product of fraud or

7

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

1    overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

2    whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service

3    Com.*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit "has long deferred to the private

4    consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

5    2009).  "[I]n evaluating whether the settlement is fair and adequate, the court's function is not to

6    second-guess the settlement's terms." *Garner v. State Farm Auto Ins. Co.*, 2010 WL 1687832,

7    *8 (N.D. Cal. 2010).

8         **A.      The Proposed Settlement is Presumed to Be Fair**

9         "Settlements that follow sufficient discovery and genuine arms-length negotiation are

10   presumed fair." *In re Wireless Facilities, Inc. Securities Litigation II*, 253 F.R.D. 607, 610 (S.D.

11   Cal. 2008).  Here, the parties negotiated the Proposed Settlement at an arm's length with the

12   assistance of esteemed mediator Hon. Edward Infante (Ret.) after comprehensive discovery and

13   class certification.  Through extensive factual investigation, motion practice, work with experts,

14   discovery, and strenuous negotiations, Class Counsel—who have significant experience in

15   national consumer class actions and product defect litigation—assessed the strengths and

16   weaknesses of the Settlement Class's claims and the benefits of the Proposed Settlement.  Class

17   Counsel gave deference to relevant considerations, including the significant social value of a

18   settlement that provides not only compensation to qualified Class Members but also nationwide

19   direct notice of the alleged defect present in Class Members' vehicles.

20        The fairness presumption here is particularly appropriate because the percentage of

21   objections is extremely small; only eight (8) objections have been filed, which is less than

22   0.00094% of the 857,444 current and former owners provided with direct notice, (Racines Dec.,

23   ¶¶ 6, 17).  Courts have consistently recognized that "the absence of a large number of objections

24   to a proposed class actions settlement raises a strong presumption that the terms . . .  are

25   favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

26   523, 529 (C.D. Cal. 2004).  "Thus, the Court 'may appropriately infer that a class action

27   settlement is fair, adequate, and reasonable when few class members object to it.'" *Garner*, 2010

28   WL 1687832 at *14 (quoting *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 U.S. Dist. LEXIS 93989,

8

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

1   *15 (N.D. Cal. 2009)).  *See also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir.

2   1990) (finding that 29 objections out of a 281-member class "strongly favor settlement").

3       **B.      All of the Relevant Criteria Support Final Approval**

4           In deciding whether to grant final approval to a class action settlement, courts consider

5   several factors, including:

6           [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely
            duration of further litigation; [3] the risk of maintaining class action status
7           throughout the trial; [4] the amount offered in settlement; [5] the extent of
            discovery completed, and the stage of the proceedings; [6] the experience and
8           views of counsel; [7] the presence of a governmental participant; and [8] the
            reaction of the class members to the proposed settlement.
9

10  *Rodriguez*, 563 F.3d at 963, quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *see also*

11  *Staton*, 327 F.3d at 959.  The list of factors is not exhaustive and should be tailored to each case.

12  *Staton,* 327 F.3d at 959.  Applied to this case, all of the relevant criteria support final approval of

13  the Proposed Settlement.

14       **1.      The Strength of Plaintiffs' Case**

15          In securing certification of a class of California consumers, the Plaintiff Class

16  demonstrated an allegedly defective DSS installed across the range of affected vehicles that could

17  trigger Defendant's duty to disclose a safety risk under California law.  The Plaintiff Class has a

18  strong case, but the presence of significant risks in continuing the litigation cannot be ignored,

19  including risks for the majority of Settlement Class Members who are not members of the

20  California-only Plaintiff Class previously certified by the Court.

21          Defendant NNA has contested and would continue to contest vigorously the merits of

22  Class Members' claims, as well as the named Plaintiffs' ability to obtain relief on behalf of a

23  class—even on a smaller scale of California-only Class Members.  NNA denies that it engaged in

24  any wrongful conduct.  In addition, NNA has interposed several defenses to the claims asserted,

25  including that it had no knowledge of the defect or intent to deceive consumers.  Moreover, NNA

26  argues that Class Counsel will be unable to demonstrate NNA's obligation to disclose the alleged

27  DSS defect given NNA's position that the alleged defect does not involve a material issue of

28  safety because a DSS failure event allegedly causes Affected Vehicles to revert to a manual

9

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

1  breaking mode that complies with Federal Motor Vehicle Safety Standards.

2  Numerous legal issues would necessarily be subject to novel and extensive litigation, and

3  possible appeal.  Other defenses are fact-based and would be determined by the trier of fact if the

4  case proceeded to trial. There is, in short, certainly no guarantee that Plaintiffs would ultimately

5  prevail on these legal and factual issues, especially when one considers the age and mileage of

6  the affected vehicles at issue here.  Thus, as in any case, the risk of losing must be considered in

7  evaluating the adequacy of a proposed settlement.

8  Furthermore, numerous members of the Settlement Class would likely be unable to

9  achieve any relief *at all* outside final approval of the settlement because their home state's law

10  may not provide the same remedies available to members of the California-only Plaintiff Class,

11  or because their claims are otherwise untimely under their home state's laws.  Under the

12  Settlement Agreement, many members of the Settlement Class will receive a benefit despite the

13  fact that they would be unable to rely on some specific features of California law, including a 4-

14  year limitations period, a tolling of their claims as members of the California-only class, or

15  California's imposition of a manufacturer's continuing duty to disclose safety defects *beyond* the

16  expiration of a product's warranties (which occurred years ago for all Affected Vehicles).

17  ## 2.    The Risk, Complexity and Duration of Further Litigation

18  Another factor in assessing the fairness of the Proposed Settlement is the complexity,

19  expense, and likely duration of continuing litigation.  *Officers for Justice*, 688 F.2d at 625;

20  *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977).  In applying this factor, the

21  Court must weigh the benefit of the Settlement against the expense and delay involved in

22  achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 434 (5th

23  Cir. 1971).  Here, Defendant vigorously litigated the case and presented every intention of

24  continuing its spirited defense through trial and appeal.  At the time of settlement, the Plaintiff

25  Class still faced significant hurdles, including additional merits discovery, expert witness

26  challenges, a summary judgment motion wherein Defendant would seek a binding dismissal of

27  all members' claims, and a lengthy, technical trial on the merits.  The avoidance of such an

28  expenditure of resources, rendered unnecessary by the Proposed Settlement, is beneficial to all

1    parties and to the Court. *Tittle v. Enron Corp. (In re Enron Corp. Sec.)*, 228 F.R.D. 541, 565

2    (S.D. Tex. 2005); *In re Prudential SEC. Inc., Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y.

3    1995).

### 3.    The Risk of Maintaining Class Action Status Throughout Trial and On Appeal

Defendant maintained that Plaintiffs' claims were not subject to class-wide determination, not only with respect to quantification of damages but also with respect to reliance, causation, and Defendant's duty to disclose the alleged defect.  In particular, Defendant would argue there is no duty to disclose a safety issue because Class Vehicles can rely on back-up braking systems, class issues are not predominant where not all Class Members' vehicles have manifested the alleged latent defect, and not all Class Members have incurred out-of-pocket expenses for replacement of the DSS.  Furthermore, Defendant vigorously opposed class certification, and would be able to appeal the Court's certification decision as of right after a decision on the merits.  Finally, members of the preliminarily certified Settlement Class will obtain relief where a class action could otherwise never be maintained in this Court due to their home states' variations in the law governing consumer claims and their available remedies.  *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).

### 4.    The Amount Offered in Settlement

The Settlement provides substantial benefits that directly address Defendant's failure to disclose the alleged safety defect and the out-of-pocket expenses incurred by Class Members who paid to remedy the alleged defect after DSS failure.  The Settlement Class will receive crucial notice of the alleged DSS defect in their Affected Vehicles and the opportunity to make a claim for reimbursement for Class Members' costs to repair or replace a faulty DSS in their Vehicles. Specifically, Class Members with a diagnostic error code C1179 (DSS failure) at the time of DSS repair or replacement will be entitled to receive partial reimbursement of their expenses depending on the mileage of their vehicle at the time of repair in accordance with the Compensation Schedule.  After extensive negotiations, the Parties agreed to this Schedule that reflects NNA's out-of-warranty compensation offer dependent on  the amount of vehicle life (by

11

1   mileage) of Affected Vehicles used prior to DSS repair as confirmed by diagnostic error code

2   C1179.  There is no cap on the total amount of compensation made available to qualifying

3   members of the nationwide settlement class.  In addition, the Proposed Settlement shifts the

4   monetary burden of notice and administration, and attorneys' fees and expenses, to Defendant

5   and its supplier CAS.  The costs of notice, administration, attorneys' fees and expenses, and class

6   service awards do not affect the compensation available to Class Members under the Proposed

7   Settlement and Compensation Schedule.

8           The relief to the Settlement Class is substantial and addresses the core issues in this

9   litigation—the non-disclosure of a latent defect in Class Members' vehicles and the out-of-pocket

10  costs expended by Class Members to remedy the defect.  The benefit to the Settlement Class

11  greatly exceeds other cases where settlements have been approved.  *See, e.g.*, *In re Critical Path,*

12  *Inc.*, 2002 WL 32627559, *7 (N.D. Cal. 2002); *Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417,

13  *9 (N.D. Cal. 2007).

14                  **5.      Extent of Discovery and the State of the Proceedings**

15          Final approval is also favored because the Parties completed substantial investigation and

16  discovery prior to the Proposed Settlement.  Courts consider the extent of discovery completed

17  and the stage of the proceedings in determining whether a class action settlement is fair, adequate

18  and reasonable.  *Rodriguez*, 563 F.3d at 967; *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec.*

19  *Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000).  *See also* MCL 4th, section 21.62 at 410 ("Some factors

20  that may bear on a review of settlement . . . [include] the maturity of the underlying substantive

21  issues, as measured by the information and experience gained through adjudicating individual

22  actions, the development of scientific knowledge, and other factors that bear on the probable

23  outcome of a trial on the merits.")

24          Here, the Parties agreed to the Proposed Settlement after more than 4 years of

25  investigation and litigation directed specifically at Nissan North America, including extensive

26  discovery about both the facts and law at issue, Class Counsel's review of approximately 18,000

27  pages of technical documents produced by Defendant and by non-parties, seven depositions of

28  defendant's corporate representatives, extensive deposition cross-examination of plaintiffs'

12

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

1  retained experts, and the deposition of Defendant's retained expert.   Nissan North America

2  clearly articulated its defenses to class certification and the merits of those defenses through

3  motion practice, and its arguments to the Ninth Circuit seeking permissive appeal of the

4  certification of the California-only Plaintiff Class.

5          It is also appropriate to consider Class Counsel's prior experience with consumer class

6  actions, including litigation involving automotive defects.  *Zeisel v. Diamond Foods, Inc.*, 2012

7  U.S. Dist. LEXIS 148893, *4 (N.D. Cal. 2012).  For examples of prior experience of Class

8  Counsel, see, e.g., *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330 (N.D. Cal. 2010); *Keilholtz*

9  *v. Lennox Hearth Prods.*, 4:08-cv-00836-CW, Order of June 10, 2011, Dkt. # 298 (N.D. Cal.);

10 *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005).

11         After years of negotiations, including three mediation sessions at various stages of the

12 litigation, and months of negotiations while the parties finalized their settlement-in-principle

13 under Mediator Infante's close oversight and scrutiny, Plaintiffs secured a fair and reasonable

14 settlement based on a strong foundation of relevant knowledge and a realistic assessment of the

15 benefits and risks of proceeding to trial.  The Court can reasonably conclude that the parties have

16 "a full and fair understanding of their cases and their opponent's case."  *Zeisel*, 2012 U.S. Dist.

17 LEXIS 148893 at *10.  *See Rodriguez*, 563 F.3d at 967.

18         **6.      The Experience and Views of Counsel, and a Neutral Mediator**

19         The Proposed Settlement is fair, reasonable, adequate, and in the best interests of the

20 Settlement Class as a whole.  Indeed, Class Counsel believe this Proposed Settlement is an

21 excellent result.  (Wolden Dec., Dkt. # 160, ¶ 14; Tapley Dec., Dkt. # 161, ¶ 10; Ram Dec., Dkt.

22 # 162, ¶ 5; Wyly Dec., Dkt. # 164, ¶ 7). Where class counsel is qualified and well-informed, their

23 opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight.  *See*

24 *Ellis* v. *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  Mediator Infante has

25 expressed that "this settlement is an excellent result for class members," and that "its terms fairly

26 account for the risks and potential awards of the claims being settled." (Infante Dec., ¶ 6).

27         **7.      The Presence of a Government Participant**

28         No governmental entity is a party to this action.  However, in compliance with the notice

provision of CAFA 28 U.S.C. section 1715, notice of this Settlement has been provided to the United States Attorney General, and the Attorneys General of each State.  (Passarella Dec., Dkt. # 163, ¶ 16).  "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."  *Garner*, 2010 WL 1687832 at *14.  Not one governmental agency has objected.  Class Counsel have not received any inquiries or criticisms from any Attorney General.

### 8. Class Members' Reaction Favors Final Approval

The Class Members' responses support settlement approval.  The named Plaintiffs have also voiced their approval.  (Brandon Banks Dec., ¶ 22; Erin Banks Dec., ¶ 12; Soloway Dec., ¶ 3; West Dec., ¶ 18).

### a. Class Member Reaction Overwhelmingly Favors Settlement Approval

A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few settlement class members object to it.  *Marshall*, 550 F. 2d at 1178.  This inference is fully justified here by the minimal number of objections.  Notice of the Proposed Settlement has been widely disseminated through the mailing of individual notice informing Settlement Class Members of their rights to comment on, object to, or opt out of the Proposed Settlement.  (Racines Dec., ¶¶ 3-22, Exs. A-C).  In addition, the Settlement Administrator has set up a toll-free number and dedicated website that made detailed notice available in accordance with the approved Notice Plan.  (*Id*. at ¶¶ 10-11).

A settlement warrants final approval when a significant majority of Class Members have not objected to or opted out of a settlement.  *Nat'l Rural Telecomms.*, 221 F.R.D. at 529 ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").  Thus, for example, in *Stoetzner v. U.S. Steel Corp.*, the Third Circuit found that objections of only 29 class members of a settlement class of 281 –over 10% – "strongly favors

14

1    settlement." *Stoetzner*, 897 F.2d at 118-19.  In *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624

2    (N.D. Cal. 1979), the Court found that objections from 16% of a class constituted a "persuasive"

3    showing that a settlement was adequate.

4           Here, approximately 857,444 current and former owners of Affected Vehicles received

5    notice by direct mail.  (Racines Dec., ¶¶ 6, 17).  Yet, only 101 Settlement Class Members have

6    objected or opted out—less than 0.012%.  (*See id.*, ¶¶ 6, 20, 21).  The Settlement Class's

7    response to the Proposed Settlement has been decidedly positive, and the Proposed Settlement

8    should be approved.

9                  **b.      The Few Objections Received Should Not Preclude Approval**

10          The deadline for opt out or objection was April 20, 2015.  (Dkt. # 175, p. 2).  Only eight

11   (8) objections were received by KCC or by the Court, comprising approximately .0009% of

12   Affected Vehicle owners.  (Racines Dec., ¶¶ 6, 17, 21).  When added to the 93 opt-outs, only 101

13   of the 887,054 current and former owners have provided negative or neutral responses to the

14   Settlement.

15          Most of the timely objections submitted oppose final approval because members of the

16   nationwide Settlement Class will not receive 100% reimbursement under the compromise

17   reached through settlement.  For example, Theresa Dahlen of California states that she "feel[s] all

18   vehicles should have this safety problem fixed with no charge to the customer."  (Dkt. # 178, p.

19   1).  Steve A. Satchwell of Maryland requests that "the agreement [] be amended to reimburse

20   100% of repair costs regardless of mileage."  (Dkt. # 179).  Martin Brown of Illinois writes that

21   "the suspect unit(s) should be replaced free of charge immediately."  (Dkt. # 183, p. 1).  Todd

22   Ouzts of Oregon writes that he qualifies for $200.00 in reimbursement, but that "Plaintiffs should

23   be reimbursed at 100% of our repair costs regardless of the mileage at which those expenses

24   occurred[.]"  That members of the Class may or may not be able to secure greater relief *after* the

25   risks and expenses of continued litigation and trial is no basis for rejection of the settlement,

26   which obviously reflects a compromise in consideration of those factors.  The relief outlined in

27   Section III(B)(2) reflects the relative strengths of the Class Members' claims and NNA's

28   defenses, that NNA is offering out-of-warranty compensation, and that Affected Vehicles have

15

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

1    experienced a varying useful life (by mileage) prior to DSS repair.  Finally, those objectors who

2    are not members of the certified California-only Plaintiff Class may not be eligible for *any relief*

3    *at all* outside what is obtained through the Proposed Settlement.

4        To the extent objectors desire to be reimbursed before having their vehicles repaired or

5    otherwise avoid out-of-pocket expenses altogether, their criticisms must rest with the limitations

6    inherent in the class action mechanism itself.  *See, e.g.*, (Dkt. # 185, p.1) (Collins writes that

7    nothing was offered "to the person that couldn't afford to take their vehicle into a dealership");

8    (Dkt. # 176, p. 2) (Ouzts writes that "any repair related to the affected systems should be

9    considered qualified for reimbursement").  Submitted claims must be verified through diagnosis

10   and documentation of a qualifying repair; any alternative to Class Members' expenditure of out-

11   of-pocket expenses and subsequent reimbursement by Defendant would improperly require a

12   third party, such as a privately owned dealership that is not a party to the litigation or the

13   Settlement Agreement and Release, to incur the costs of a repair.

14       Other objectors criticize the service awards or attorneys' fees while misconstruing the

15   value of the settlement.  Harold E. Belcher of California, who has excluded himself from the

16   class and has no standing to object, also submits an objection that assumes legal conclusions and

17   facts not in the record: that NNA and Continental have been deemed liable for every Affected

18   Vehicle in the country (even beyond the California-only Plaintiff class); that Nissan and/or

19   Continental would incur internal costs of $1,000.00 per vehicle if liable; that there are 350,000

20   class members with compensable claims; and that class members will be eligible for an average

21   reimbursement of $200.00 each.  (*See* Dkt. # 180).  Martin Brown of Illinois writes that the

22   attorneys are "not entitled to 68.5% of the payout," but apparently and mistakenly uses the

23   $5,000,000 CAFA jurisdiction allegation in the complaint as the denominator in his equation.

24   Likewise, Mr. Brown incorrectly assumes that an award of attorneys' fees would reduce relief to

25   the class.  (Dkt. # 183, p. 1).

26       Objector Louis R. DiFranco complains about issues with his vehicles' engine and

27   transmission unrelated to the alleged defect addressed in this action.  (Dkt. # 182).

28       David Arimura of California improperly sent an objection letter to the settlement

1    administrator along with his claim form, rather than filing an objection with the Court.  (Racines

2    Dec., Ex. E).

3          The objection of Roxanne Collins of Texas was received on April 23, 2015, after the

4    April 20 deadline (Dkt. # 185).  To the extent she objects because claimants must incur out-of-

5    pocket expenses before receiving reimbursement, those concerns are addressed above.

6    Furthermore, her concerns regarding NNA's potential liability for injuries caused by DSS failure

7    are adequately addressed by the explicit exclusion of personal injury claims from the Settlement

8    Agreement and Release.

9          No objectors have retained counsel or indicated an intention of appearing at the Final

10   Fairness Hearing.

11              **9.       Absence of Collusion**

12         The Court should consider the absence of collusion when determining the reasonableness

13   of a settlement submitted for final approval.  Here, there is ample evidence that the Proposed

14   Settlement is the result of arms' length negotiations with a respected mediator and former

15   Magistrate Judge in this district.  Class Counsel and Judge Infante (Ret.) have declared under

16   oath that relief to the Settlement Class was agreed upon before there was any discussion relating

17   to fees or reimbursement of expenses.  (Tapley Fee Dec., Dkt. 177-1, ¶¶ 62-63; Infante Dec., ¶ 4).

18   After Class Counsel negotiated relief for the Settlement Class, Judge Infante assisted the parties

19   in reaching an agreement on the fees and expenses that Class Counsel would request (Infante

20   Dec., ¶ 4), and the agreed fees were far less than Class Counsel's Lodestar (Dkt. # 177, pp. 11-

21   12).  There is simply no evidence of collusion.  (Infante Dec., ¶ 6).

22         By all relevant measures, the Proposed Settlement is fair, adequate, reasonable, and

23   deserving of final approval.  The Proposed Settlement provides substantial and prompt relief to

24   the California-only Plaintiff Class certified by this Court.  Moreover, the nationwide Settlement

25   Class as a whole is particularly impressive when viewed in light of the risks, delays, and costs of

26   continued litigation, and the potential unavailability of relief for consumers who are not members

27   of the California-only Plaintiff Class certified by this Court.

28

17

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

1  **VI.     THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY
           SOUND AND HAS BEEN FULLY IMPLEMENTED; FEDERAL AND STATE
2          OFFICIALS HAVE BEEN NOTIFIED AS REQUIRED BY CAFA.**

3      **A.     Notice to the Settlement Class**

4          To protect the rights of absent class members, the parties must provide the Settlement

5  Class with the best notice practicable of a potential class action settlement.  *Phillips Petroleum*

6  *Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" with

7  description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v.*

8  *Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to all class

9  members who can be identified through reasonable efforts); *Mullane v. Cent. Hanover Bank &*

10  *Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably

11  calculated, under all the circumstances, to apprise interested parties of the pendency of the action

12  and afford them an opportunity to present their objections")  "Rule 23 . . . requires that individual

13  notice in [opt-out] actions be given to all class members 'who can be identified through

14  reasonable efforts' with others given the 'best notice practicable under the circumstances' . . .

15  Due process does not require actual notice to parties who cannot be reasonably identified."  MCL

16  4th § 21.311 at 382, n. 882.

17          The MCL 4th, § 21.312 at 387 states that the settlement notice should:

18      •      describe the essential terms of the Proposed Settlement;

19      •      provide information regarding attorneys' fees;

20      •      indicate the time and the place of the hearing to consider approval of the

21             settlement, and the method for objecting to or opting out of the settlement;

22      •      explain the procedures for allocating and distributing settlement funds, and, if the

23             settlement provides different kinds of relief for different categories of class

24             members, clearly set out those variations; and

25      •      prominently display class counsel's contact information and the procedure for

26             making inquiries.

27          As the MCL 4th concludes: "[e]ven though a settlement is proposed, the original claims,

28  relief sought, and defenses should be outlined; such information is necessary for class members

1    to make an informed decision. The notice should describe clearly the options open to the class

2    members and the deadlines for taking action." *Id*.

3            Here, the mailed short-form notice and the detailed Notice available on the dedicated

4    Settlement website satisfy all of the relevant criteria.  This Court approved the Notice Plan and

5    forms of notice (Dkt. # 173, ¶¶ 8-9), and the Court-approved Notice Plan has been fully

6    implemented.  The Notice Provider has sent all reachable former and current owners of Affected

7    Vehicles via U.S. direct mail a short form notice that informs them of the Settlement, and how

8    and where to find additional information regarding the Settlement.  (Racines Dec., ¶¶ 3-22, Exs.

9    A-C).  On the dedicated Settlement website, Class Members can review the detailed Notice,

10   which provides clear and concise information with respect to all the relevant aspects of the

11   litigation, including (a) the class definition and statement of claims; (b) the litigation history; (c)

12   the terms of the Settlement Agreement; (d) the binding effect of any judgment approving the

13   Settlement on those who do not opt out; (e) the right to (and procedure for) opting out or back

14   into the Settlement Class; (f) the right to (and procedure for) objecting to the Settlement; (g) who

15   to contact to obtain additional information regarding the Settlement or the litigation; (h) the

16   manner in which compensation will be provided to the Class Representatives to compensate them

17   for their service to the Class; (i) the manner in which Class Counsel will be compensated; and (j)

18   additional information as required and/or suggested by the Court's Procedural Guidance For

19   Class Action Settlements.

20           As of April 24, 2015, the Settlement Administrator has successfully delivered a total of

21   857,444 direct notices to current and former owners of Affected Vehicles.  (Racines Dec., ¶¶ 6,

22   17).  There are 29,610 identified owners with unresolved bad addresses, meaning notice has been

23   successfully delivered to approximately 96.6% of current and former owners in the United States.

24   (*Id.*).  Only 93 individuals have timely opted out, representing approximately .01% of owners.

25   (*Id.* at ¶¶ 6, 20).  As of April 24, 2015, 1,472 claims have been filed.  The Proposed Settlement

26   provides for a claims period lasting until 90 days *after* this Court's Final Approval to submit

27   claims for cost of repairs incurred prior to the Notice Date.  (Dkt. # 160-1, ¶ 1).  Class Members

28   who have yet to seek repair will have until 120 days after Final Approval to submit a claim for

1   reimbursement, (*id.*), allowing owners who were not aware of the alleged DSS defect or who

2   have otherwise not had their vehicles repaired ample time to collect and prepare documentation,

3   seek DSS replacement, and otherwise claim reimbursement of out-of-pocket expenses.

4        **B.    Notice To Federal And State Officials**

5        Under CAFA, notice of all federal class action settlements must be sent to the appropriate

6   state and federal officials as a condition of obtaining court approval of that settlement.  In a

7   consumer case such as this, the "appropriate federal officer" is the Attorney General of the

8   United States.  The Settlement Administrator has complied with these notice requirements of the

9   Class Action Fairness Act of 2005.  (*See* Passarella Dec., Dkt. # 163, ¶ 16).

10  **VII.    THE COURT SHOULD AWARD SERVICE PAYMENTS TO THE CLASS
               REPRESENTATIVES**

11

12       The Settlement Agreement and Release allows Class Counsel to request and for defendant

13  NNA or CAS to pay service payments to Class representatives Erin Banks, Bandon Banks, David

14  Soloway, and Tom West not to exceed $5,000.00 each, as approved and ordered by the court

15  upon final approval of the Class Settlement.  (Wolden Dec., Dkt. # 160, ¶¶ 33, 36).  Class

16  representatives' agreement to the Settlement is not conditioned in any manner on the award of a

17  service payment, or its amount.  (*Id.* at ¶ 16).  Each of the Class representatives has given their

18  time and accepted their responsibilities admirably, participating actively in this litigation as

19  required and in a manner beneficial to the Class generally.  (*Id.* at ¶¶ 17-18; Wyly Dec., Dkt. #

20  164, ¶ 6).  Each Class representative has spent considerable time: keeping contact with Class

21  Counsel and staying informed of the litigation's progress through conferences with Class

22  Counsel, providing responsive documents, responding to written interrogatories, reviewing and

23  approving drafts of various evidentiary declarations, preparing for and attending their videotaped

24  depositions, remaining on call during three mediations, engaging with the progression of

25  settlement negotiations, and reviewing and ultimately approving the terms of the Proposed

26  Settlement.  (Brandon Banks Dec., ¶¶ 4-22; Erin Banks Dec., ¶¶ 4-12; Soloway Dec., ¶¶ 3-21;

27  West Dec., ¶¶ 5-18).

28       The Ninth Circuit has recently explained that an award of $5,000.00 is "relatively small

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

1   [and] well within the usual norms of 'modest compensation' paid to class representatives for

2   services performed in the class action." *Resnick v. Frank (In re Online DVD-Rental Antitrust*

3   *Litig.)*, 779 F.3d 934, 943 (9th Cir. 2015).  As in *Resnick v. Frank*, "[t]his case does not involve

4   an *ex ante* incentive agreement between the class representatives and class counsel, … [n]or does

5   it involve a settlement which explicitly conditioned the incentive awards on the class

6   representatives' support for the settlement[.] …  [T]he class settlement agreement provide[s] no

7   guarantee that the class representatives would receive incentive payments, leaving that decision

8   to later discretion of the district court." *Id.* (internal citations omitted).  There is nothing

9   conditional about the terms of the service payment awards sought.  In the absence of such

10   adequacy concerns, the Court should take into account:  "(1) the actions the plaintiff has taken to

11   protect the interests of the class; (2) the degree to which the class has benefitted from those

12   actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended

13   in pursing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable

14   fears of workplace retaliation, personal difficulties, and financial risks." *Harris v. Vector*

15   *Marketing*, 2013 WL 381202, *7 (N.D. Cal. 2013).

16           The Class Representatives have dedicated considerable time and effort to meaningfully

17   participate in this action.  The benefit to the class is manifest: current and former owners

18   nationwide have received direct notice of the alleged defect in their vehicles, and now have an

19   opportunity to seek reimbursement for a repair, whether the repair occurred prior to this lawsuit

20   or as a result of receiving notice.  Importantly, the service payments will be paid by the

21   Defendant or its parts supplier, and are well in line with amounts considered reasonable in cases

22   such as this.  *See e.g.*, *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, *10 (N.D. Cal. 2009) ("In

23   general, courts have found that $5,000 incentive payments are reasonable."); *Jacobs v. Cal. State*

24   *Auto. Ass'n Inter-Insurance Bureau*, 2009 WL 3562871, *5 (N.D. Cal. 2009) (describing $5,000

25   service payments as "presumptively reasonable" for this district); *Resnick*, 779 F.3d at 934 (Ninth

26   Circuit affirming $5,000 service payment as "well within the usual norms of 'modest

27   compensation'").

28

## VIII.   CONCLUSION

Plaintiffs and Class Counsel achieved the Settlement through careful factual investigation and work-up, years of hard-fought, adversarial litigation, and solid lawyering.  It is an excellent result for the Settlement Class.  The Proposed Settlement provides, at no cost to the Class, a real benefit that addresses Defendant's nondisclosure of an alleged safety defect present in vehicles sold across the country.  This relief is obtained from a Defendant who has potentially dispositive legal and factual defenses to liability, including appellate review of its vigorous opposition to certification of the Plaintiff Class.  The Proposed Settlement is fair, adequate, and reasonable. Thus, Plaintiffs and Class Counsel respectfully request that this Court grant final approval to the Proposed Settlement, award Erin Banks, Brandon Banks, David Soloway, and Tom West service payments of $5,000 each, award Class Counsel attorneys' fees and expenses in the amount of $3,450,000, and enter a Judgment and Order of Dismissal.

Dated:  May 1, 2015                           Respectfully submitted,

By:          */s/ Michael F. Ram*
RAM, OLSON, CEREGHINO
& KOPCYZNSKI LLP
Michael F. Ram, SBN 104805
Email: mram@rocklawcal.com
Karl Olson, SBN 104760
Email: kolson@rocklawcal.com
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

CORY WATSON, P.C.
F. Jerome Tapley (*Pro Hac Vice*)
Email: jtapley@corywatson.com
Hirlye R. "Ryan" Lutz, III (*Pro Hac Vice*)
Email: rlutz@corywatson.com
2131 Magnolia Avenue
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

CARTER WOLDEN CURTIS, LLP
Kirk J. Wolden, SBN 138902
Email: kirk@cwclawfirm.com
Clifford L. Carter, SBN 149621
Email: cliff@cwclawfirm.com
1111 Exposition Boulevard, Suite 602
Sacramento, California 95815
Telephone: (916) 567-1111

Case No. 4:11-cv-02022-PJH – PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT

1

2  WYLY~ROMMEL, PLLC
   James C. Wyly (*Pro Hac Vice*)
3  Email: jwyly@wylyrommel.com
   Sean F. Rommel (*Pro Hac Vice*)
4  Email: srommel@wylyrommel.com
   4004 Texas Boulevard
5  Texarkana, Texas 75503
   Telephone: (903) 334-8646
6  Facsimile: (903) 334-8645

7  *Attorneys for Plaintiffs and the Class*

8  N:\Docs\1281-01\Pleadings\FINAL APPROVAL\MotFinalApproval-FINAL.rtf

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28