UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON BANKS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>    Defendant. | Case No. 11-cv-2022-PJH<br><br>**ORDER RE NOTICE OF AMENDED PROPOSED SETTLEMENT** |

At a case management conference held on February 18, 2016, the parties proposed a procedure by which notice of the amended proposed settlement would be sent only to class members who opted out of the original proposed settlement. The parties argued that the proposed procedure was similar to that approved in Klee v. Nissan North America, Inc., 2015 WL 4538426 (C.D. Cal. July 7, 2015). However, because the parties did not cite to Klee in their case management statement, the court did not have an opportunity to review the case prior to the case management conference.

Following the case management conference, the court reviewed Klee and noted that, unlike Klee, this is a "claims made" case, so only class members who submit a valid claim will receive any benefit. The court further observed that, "[a]s a result, if the court were to send notice only to class members who opted out of the original proposed settlement, all of the class members who neither opted out nor submitted a claim would receive nothing. Contrast that with the situation in Klee, where those silent class members would still receive the benefit of the modified settlement." Dkt. 211 at 2.

The court then expressed its inclination to "require that notice be sent to (1) class

1    members who opted out of the original settlement, (2) class members who objected to
2    the original settlement, and (3) class members who did not respond to the original
3    settlement notice." Dkt. 211 at 2. Because the issue had not been fully briefed, the court
4    allowed the parties an opportunity to file a supplemental brief "explain[ing] why the court
5    should follow the approach taken in Klee," despite the key differences between the two
6    cases.
7         Defendant Nissan North America, Inc. ("Nissan") has now filed a supplemental
8    brief, arguing that notice should not be sent to the class members who did not respond to
9    the first notice.[1] Nissan makes two primary arguments: (1) supplemental notice is not
10   required when a settlement is amended to increase the benefits to the class, and (2)
11   supplemental notice would incur an "extraordinary expense."
12        As to (1), Nissan provides a string citation of cases in support of its argument, but
13   only two of those cases address the specific question posed by the court's previous order
14   – whether courts in claims-made cases have approved amended settlements without
15   providing notice to the entire class. And in fact, a closer look at one of those two cases
16   shows that Nissan was not entirely accurate in stating that "class members had to submit
17   a claim in order to ensure their participation in the settlement." See In re Toyota Motor
18   Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation,
19   2013 WL 3224585 (C.D. Cal. June 17, 2013).
20        The proposed settlement in Toyota actually had four parts, only some of which
21   required claims to be submitted by class members. The four parts were: (1) cash
22   payments to cover the decrease in value due to the alleged defects, (2) installation by
23   Toyota dealers of a "brake override system" (and cash payments to owners of vehicles
24   that were ineligible for this installation), (3) establishment by Toyota of a "customer
25   support program," and (4) establishment by Toyota of a "safety and education fund."
26   2013 WL 3224585 at *2. Based on the Toyota opinion, it appears that (2) and (3) were

---

[1] Plaintiff did not join the supplemental brief, instead filing a separate document that did not take a position on the notice issue. See Dkt. 212.

1    provided to all class members – regardless of whether they submitted claims – which,
2    standing alone, is enough to distinguish Toyota from the present case.  However, in even
3    starker contrast to the present case, the Toyota settlement provided for cash payments to
4    be made even to non-claimants.  See id. at *3 ("After the claimants are paid out" of the
5    settlement funds, and after settlement administration costs were paid, "the residual will be
6    directly distributed to class members who did not file claims").  So, under the proposed
7    settlement in Toyota, non-claimants received:  (1) installation of a brake override system
8    (if eligible), (2) access to Toyota's customer support program, and (3) residual cash
9    payments.  In the present case, non-claimants will receive nothing absent additional
10   notice.

11         The second case cited by Nissan, Union Asset Management Holding A.G. v. Dell,
12   Inc., is a closer fit, because it was purely a "claims-made" settlement, and because non-
13   claimants received nothing under the proposed settlement.  669 F.3d 632 (5th Cir. 2012).
14   Dell involved a securities class action settlement where stock owners could submit a
15   claim for a payment from the settlement fund.  When the settlement was first approved, it
16   contained a "de minimis" provision whereby any claimant whose allocation was less than
17   $10 would not receive any payment.  Id. at 641.  The settlement was modified to remove
18   that provision, and to allow those "de minimis" claimants to receive the amount due, but
19   no additional notice was sent to non-claimants.

20         While the overall posture of Dell is analogous to the present case, the payment
21   amounts are not.  In Dell, any class member who chose not to submit a "de minimis"
22   claim as part of the original settlement, but who would have submitted a claim as part of
23   the amended settlement (which removed the "de minimis" provision), lost out on a
24   maximum of $10.  The amounts at issue in this case are vastly different.  Many of the
25   class members would have received just $20 under the original proposed settlement, but
26   would receive a minimum of $400 under the amended settlement.  The court finds it likely
27   that a significant number of class members could have seen that they were due $20 (or
28   even $60) under the original proposed settlement and chosen not to submit a claim, but

1  would have chosen differently if they were to receive $400.  The court further notes that
2  submission of a claim in this case is not a perfunctory task – the claim form instructed
3  each claimant as follows:

> You must include the following required documentation for your claim to be considered:
>
> (1) documentation reflecting the C1179 diagnostic code (which documentation was made at the time of inspection by a licensed mechanic (or a mechanic employed by a licensed or professional auto repair business), and occurred at or before the time of repair or replacement);
>
> (2) proof that the out-of-pocket costs were incurred and actually paid by me; and
>
> (3) proof that I owned the vehicle at the time the repair/replacement was done.

Dkt. 160, Ex. C.

Nissan maintains that "the proposed settlement class members who decided not to opt out of the original settlement had more than adequate incentive to file a claim," but the court finds that unlikely for the many class members who stood to gain at most $20 (or even $60) from the original settlement.  As shown above, to receive that $20 (or $60), class members had to submit multiple pieces of documentation, some of which (especially the repair documentation bearing the specific "C1179" diagnostic code) may not have been easy to find.  The court finds it likely that a significant number of class members may not have been adequately incentivized to expend that effort for $20, but would be for $400.

The court further notes that more than one-fifth of the claimants would have received just $20 under the original proposed settlement, and more than one-third would have received $60 or less.  Nissan emphasizes that, in Toyota, no supplemental notice was required even though the amended settlement terms "increased the benefit to class members by 30 percent or more," but fails to recognize that, in this settlement, many class members would see their benefit increase by 2000% (from $20 to $400).  It would

4

simply be unfair to increase the claim awards by orders of magnitude without providing notice to absent class members.

Nissan then separately argues that the costs of additional notice would outweigh any potential benefits.  While the court agrees that notice would indeed be costly, the cost does not provide sufficient reason to override the fundamental unfairness of denying class members a $400 settlement payment just because they chose not to claim a potential $20 payment.  Moreover, the court notes that the estimated notice cost ($364,962) is nearly ten times smaller than the amount of the proposed attorneys' fees ($3,425,000).

Accordingly, for the foregoing reasons, the court finds that notice of any proposed modified settlement must be sent to all class members, other than those who have already submitted a claim.  A revised notice shall be submitted for approval by March 31, 2016, should the parties elect to proceed with the amended proposed settlement.  Should the parties elect not to proceed with the amended proposed settlement, counsel shall appear at a case management conference on **April 14, 2016** at **2:00 p.m**.

**IT IS SO ORDERED.**

Dated:  March 17, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge